## PEOPLE v. BRITTON et al.

(Supreme Court, Appellate Division, Second Department. October 12, 1909.)

1. CRIMINAL LAW (§ 1028*)—APPEAL.—QUESTIONS NOT RAISED BELOW.

A defense which was not raised at trial need not be considered on appeal.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2619; Dec. Dig. § 1028.*]

2. CRIMINAL LAW (§ 1144*)—APPEAL—PRESUMPTIONS—FACTS NOT SHOWN BY RECORD—ADMISSIONS.

Where, in a prosecution for the larceny of funds in the possession of defendants as agents and trustees of a bank, the trial court charged without exception that it was conceded that defendants, as officers of the bank, had possession of the funds stolen, it may be assumed on appeal that such admission was made by accused, though the record does not show that fact.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3032; Dec. Dig. § 1144.*]

3. CRIMINAL LAW (§ 59*)—PRINCIPALS—ABSENT PRINCIPALS.

Under Pen. Code, § 29, making one who counsels or procures another to commit a crime a principal, one may be charged as principal who counseled or procured the commission of a crime, though he was absent when it was committed.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 76; Dec. Dig. § 59.*]

4. EMBEZZLEMENT (§ 20*)—"POSSESSION, CUSTODY AND CONTROL."

2 Rev. St. (1st Ed.) pt. 4, c. 1, tit. 3, § 59, punishes in the manner prescribed for felonious stealing any corporate officer, etc., who shall embezzle without his employer's consent any money, etc., which shall have come into his possession by virtue of such employment, which section was further amended and extended in 1874, as shown by 3 Rev. St. (6th Ed.) pt. 4, c. 1, tit. 3, § 73. Pen. Code, § 528, subd. 2, makes any person guilty of larceny, who, having in his possession, custody, or control, as officer of any corporation, etc., any money, etc., appropriates it to his own use. Defendants were president and vice president, respectively, of a bank. The president was given direct control over all employés, was required to countersign checks, which duty, with the trustees' consent, might be delegated to the vice president, who could perform the president's duties in his absence. The treasurer had custody of all moneys and a committee consisting of all three officers, together with the secretary, was given general supervision of the business between the meetings of the trustees. A company in which defendants were interested made drafts upon them which were satisfied by funds of the bank taken therefrom by the treasurer by defendants' direction, which funds were replaced by defendants' checks, which all the officers knew were worthless. *Held,* that physical possession was not essential to custody or control, and, in view of the history of the provision, defendants had "possession, custody, or control" of the funds misappropriated so as to make them guilty of larceny under subdivision 2.

[Ed. Note.—For other cases, see Embezzlement, Cent. Dig. §§ 22, 23; Dec. Dig. § 20.*

For other definitions, see Words and Phrases, vol. 6, pp. 5464–5470; vol. 8, pp. 7757, 7758.]

5. CRIMINAL LAW (§ 112*) — VENUE — PLACE OF OFFENSE — PARTLY IN ONE COUNTY.

Where drafts drawn upon accused were sent to a bank in N. county, and accused had funds appropriated from a bank in K. county, of which he was president, and taken to the bank in N. county to pay the drafts,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the larceny was partly committed in K. county, within Cr. Code Proc. § 134, making the jurisdiction of the offense in either county where the crime is partly committed in one county and partly in another, so that venue was properly laid in K. county.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 223; Dec. Dig. § 112.*]

6. EMBEZZLEMENT (§ 48*)—MISLEADING INSTRUCTIONS.

In a prosecution of bank officers for larceny by appropriating money in their possession and control, in which it appeared that defendants had made a false report to the banking department to hide their defalcations, an instruction that, while defendants were guilty of a misdemeanor in making such report, they could not be convicted of larceny upon the guilty mind incident to making the false report, but guilty intent to commit the crime of larceny was necessary to convict, was intended for defendants' benefit, to prevent a conviction for larceny, because of the misdemeanor committed, and must have been so understood by the jury; it not having been excepted to.

[Ed. Note.—For other cases, see Embezzlement, Cent. Dig. §§ 72–75; Dec. Dig. § 48.*]

7. BANKS AND BANKING (§ 61*) — OFFICERS — OFFENSES — MAKING FALSE RE-PORTS.

Under Pen. Code, § 611, making it a misdemeanor for any officer of a corporation to knowingly concur in making any false report or statement of its pecuniary condition, officers of a bank who made a false report as to its financial condition to the state banking department were guilty of a misdemeanor.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 121; Dec. Dig. § 61.*]

8. EMBEZZLEMENT (§ 23*)—EVIDENCE—OFFER TO MAKE RESTORATION.

In a prosecution of bank officials for larceny, evidence that, after the theft, defendants agreed to restore the money stolen, was inadmissible.

[Ed. Note.—For other cases, see Embezzlement, Cent. Dig. § 34; Dec. Dig. § 23.*]

Appeal from Trial Term.

Edward E. Britton and another were convicted of grand larceny in the first degree, and, from the judgment and an order denying a motion for new trial, they appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and JENKS, BURR, RICH, and MILLER, JJ.

John L. Hill, for appellants.

John F. Clarke, Dist. Atty. (Robert H. Elder, Asst. Dist. Atty., on the brief), for the People.

MILLER, J. The defendants appeal from a judgment convicting them of the crime of grand larceny in the first degree. The indictment charges the commission of that crime in two counts. One count charges the violation of subdivision 2 of section 528 of the Penal Code —i. e., a felonious misappropriation of moneys in the possession, custody, and control of the defendants as bailees, servants, attorneys, agents, clerks, and trustees of the Eagle Savings & Loan Company— the other, a larceny at common law—i. e., by trespass. The district attorney elected on the trial to stand on the first count of the indictment. The evidence discloses that the defendants were trustees and officers of the Eagle Savings & Loan Company, a corporation or-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ganized under chapter 122, p. 234, of the Laws of 1851. . Britton was president and Schroeder was vice president. The larceny charged was the stealing of $4,000 on the 29th of February, 1908, one of a series of larcenies, aggregating $47,886.61, extending over a period of something like a year and one-half. One Wood was treasurer of the company and one Edgerton was teller and cashier. The latter had physical control of the cash drawer and kept a record of the cash. The defendants were interested in a mining scheme. The larcenies were all committed in substantially the following manner: Drafts drawn upon the defendants by the mining company were sent to a bank in Manhattan for collection. Wood by the defendants' direction took the money from the cash drawer, and either gave it to a messenger or he himself took it to the bank in Manhattan where the drafts were, and with it paid them. The defendants or one of them from time to time delivered to Edgerton worthless checks to the amount of the moneys thus taken, which, by the defendants' direction, were carried by Edgerton as cash. All knew that the checks were not good, and there was never any intention of presenting them for payment. From time to time, in anticipation of an examination by the bank examiner, the checks were changed so as to have the appearance of current business. The larcenies were discovered by the bank examiner upon making an unexpected examination. The evidence is practically undisputed, and leaves no room to doubt the felonious character of the acts charged. It does not appear that any of the money passed through the defendants' hands.

The articles of association of the Eagle Savings & Loan Company defined the duties of the president, vice president, and treasurer. The president, among other things, was required to countersign all checks, but might, with the consent of the board of trustees, delegate that power and authority to the vice president. He was required to perform all of the duties pertaining to the office of president, and was required annually to appoint an examining finance committee of three members of the board of trustees to make an examination of the books and accounts of the secretary and treasurer, and was given direct control and power over the employés of the company. In the absence of the president, the vice president was required to perform the duties of the president. The treasurer was required to have the custody of all the moneys and keep the accounts of the same, to deposit the funds of the corporation in such bank, trust company, or other depository as the board of trustees might direct, and to make disbursements only upon proper vouchers. An executive committee of four members, to consist of the president, vice president, secretary, and treasurer, was required to have the general supervision and direction of the business in the intervals between the meetings of the board of trustees.

It is claimed by the appellants that they did not have the possession, custody, or control of the moneys embezzled within the meaning of the statute; that Wood had the possession, custody, or control of the moneys, and alone had such relation to them as was necessary to constitute a felonious misappropriation within the meaning of the statute; that the defendants could only be held for having counseled, aided, abetted, or procured him to do the felonious act; and that hence there

is a fatal variance between the allegations and the proof. In other words, that the acts proved were not charged, and that the acts charged were not proved. It may be a sufficient answer to say that the point was not raised on the trial. The judge charged the jury without exception that it was conceded that the defendants as officers of the corporation had possession of the funds misappropriated, from which we may conclude that counsel had made that admission, although it does not appear upon the record. However, I shall assume that the defendants are now in a position to raise the point.

The distinction between a principal and an accessory before the fact no longer exists (section 29 of the Penal Code); and a defendant may now be charged in the indictment as a principal where he counseled, induced, or procured the commission of the crime, although absent at the time of its commission. People v. Bliven, 112 N. Y. 79, 19 N. E. 638, 8 Am. St. Rep. 701. The learned counsel for the appellants, however, argues with great force and ability that that rule does not apply where, in order to constitute the offense, some one or more of the offenders must sustain a particular relation to the subject-matter thereof, and that in such case it is necessary for the indictment to allege the commission of the offense by a person sustaining the necessary relation, and that the defendant counseled, aided, or procured its commission. Many cases in other jurisdictions are cited to sustain the proposition, of which Shannon v. People, 5 Mich. 72, is perhaps the leading case.

Assuming without deciding that the proposition advanced is sound, it becomes necessary to determine the meaning of the words "having in his possession, custody or control, as a bailee, servant, agent, clerk, trustee or officer of any person, association or corporation," as used in said section 528 of the Penal Code; and to do that we must briefly review the history of the legislation respecting the crime of embezzlement. That history up to the adoption of the Revised Statutes of 1829 is reviewed by Savage, C. J., in People v. Hennessey, 15 Wend. 148, and it is shown that the whole course of legislation on the subject had been to enlarge the scope of the statute defining embezzlement. Rev. St. 1829, pt. 4, c. 1, tit. 3, § 59, provided:

"If any clerk or servant of any private person, or of any copartnership, (except apprentices and persons within the age of eighteen years,) or if any officer, agent, clerk or servant of any incorporated company, shall embezzle, or convert to his own use, or take, make way with, or secrete, with intent to embezzle or to convert to his own use, without the assent of his master or employers, any money, goods, rights in action, or other valuable security or effects whatever, belonging to any other person, *which shall have come into his possession, or under his care, by virtue of such employment or office,* he shall, upon conviction, be punished in the manner prescribed by law for feloniously stealing property of the value of the articles so embezzled, taken or secreted, or of the value of any sum of money payable and due upon any right in action so embezzled." (Italics are mine.)

In view of the changes in business methods since 1829, of the increased opportunities for misappropriation of funds by trustees and agents, and of the number of crimes of that character, it would be surprising to find a reversal of the tendency of legislation respecting that subject. In 1874, said section 59 of the Revised Statutes was further,

amended and extended. See 3 Rev. St. 1875 (6th Ed.) pt. 4, c. 1, tit. 3, § 73. When the Penal Code was enacted in 1881, what had previously been embezzlement was defined by said subdivision 2 of section 528 as larceny, and, in place of the words, "which shall have come into his possession, or under his care, by virtue of such employment or office," we find the words, "having in his possession, custody, or control." But no reason can be suggested for supposing that the Legislature intended by that change to limit the application of the statute to cases of physical possession. Prior to the enactment of the Code, it was necessary only that the funds should have come "into the possession or under the care" of the officer, agent, clerk, or servant by virtue of his employment or office. If physical possession was required, the words "custody, or control" are meaningless, and plainly those words are not used synonymously with "possession." According to the lexicographers, physical possession is not essential to custody or control. One may have the custody, the care, the guardianship of, and may exercise control over, what is not in his physical possession. A bank president, by virtue of his office, may have the custody and control of the bank's money, although none of it passes through his hands. In this case four persons were concerned in the commission of the offense—the defendants and Wood and Edgerton. Edgerton was a mere employé, and the articles of association gave the president control over him. There can be no doubt that all four were responsible to the corporation for the safe-keeping of its funds. Taking advantage of their office, of their superior position over Wood and Edgerton, the defendants, in disregard of their trust and in violation of their duties, stole the moneys of their corporation, for a plain case of stealing was established; and they were able to do that because of the custody and control which they exercised over the funds of the corporation by virtue of their office.

It is next objected that the offense was not committed in the county of Kings where the office of said corporation was located; but that, if at all, in the county of New York, where the money was paid over to take up the drafts. But there can be no doubt that the crime was partly committed in the county of Kings within the meaning of section 134 of the Code of Criminal Procedure. The crime was consummated when the money was turned over to the bank in New York in payment of the drafts. The first act, however, was the taking of the money from the cash drawer, pursuant to the instructions of the defendants, for the purpose and with the intention of misappropriating it.

Complaint is made of the following charge of the court, not excepted to:

"This case is peculiar in this respect: That the acts that these men are accused of here unquestionably were illegal and unquestionably were misdemeanors; but they are not to be convicted upon the guilty mind that was incident to that illegal action. The guilty mind that I speak of must be the guilty mind, the felonious or criminal intent, necessary to the crime of larceny."

A report was made by the defendants to the banking department which was manifestly false. That report was admitted in evidence. In making it the defendants were doubtless guilty of a misdemeanor as defined by section 611. of the Penal Code, and it is evident that the

118 N.Y.S.—63

purpose of the court in saying what I have quoted was to admonish the jury that they could not convict the defendants of the crime charged in the indictment because they had committed a misdemeanor in making a false report. It was intended for the benefit of the defendants, and, as it was not excepted to, we may fairly conclude that it was so understood.

Some time after the indictments were found, a composition agreement of some sort, the nature of which is not disclosed by the record, was entered into between the defendants and the said corporation. That agreement was offered in evidence, and it is now claimed that the court erred in excluding it, that it was admissible as bearing upon the question of intent. But an offer to make restitution after a theft has been discovered can have no legitimate bearing on that question. It doubtless is true that the defendants expected to make good their misappropriations before they were discovered. The case is a typical one of this kind of crime, but it was no less stealing because the defendants hoped to make good their theft, and their offer to compose the difficulty had no bearing upon their criminal intent when the money was taken. Of that the evidence leaves no doubt.

The other points raised do not require discussion.

The judgment and order should be affirmed. All concur.