[Crim. No. 728.   Fourth Dist.   Nov. 14, 1949.]

THE PEOPLE, Respondent, v. JAMES NELS EKBERG,
Appellant.

James Nels Ekberg, in pro. per., for Appellant.

Fred N. Howser, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with the crime of issuing a check without funds with intent to defraud. In a separate action he was charged with the crime of possession of a firearm capable of being concealed upon the person by one previously convicted of a felony. He pleaded not guilty and not guilty by reason of insanity in each action. At his request the actions were consolidated for trial and tried together. A jury found him guilty on both charges, and later the same jury found him sane at the time each of the offenses was committed. The defendant waived application for probation, and separate judgments were entered. While the defendant had been represented by counsel at the trial, he filed a notice of appeal in propria persona, this notice being filed only under the number of the cause involving the possession of

a firearm. He disclaims any intention to appeal on the insanity issue, but insists that he intended to appeal in both cases, and argues that since the causes were thus intertwined the appeal should be considered as having been taken with respect to both charges. Since the appeal was taken by the defendant personally, without the aid of counsel, we prefer to follow that course.

■ The general facts relating to these cases are as follows. On the afternoon of February 14, 1949, the appellant entered Hancock's Flower Shop in San Diego, represented himself to be connected with the TWA Airlines, and ordered three orchid corsages saying they were for airline hostesses. He also placed a telegraph order for flowers to be delivered to his wife in Kansas City, giving her correct address. In payment therefor he wrote a check for $19.82 on a Los Angeles bank. He then stated that the address he had placed on this check was wrong and at his request Hancock tore up that check, and filled out another check on the same bank, with a different address. Both of these addresses were fictitious. The appellant signed the second check and left the store taking the three boxed orchids with him. Hancock saved the pieces of the first check. Having become suspicious, he phoned the Los Angeles bank and learned that the appellant had no account there, a fact which was conclusively established at the trial.

About 2:30 a. m. on the morning of February 15, 1949, the appellant, while in a grill in San Diego, displayed a pistol in a manner which alarmed the cashier. She called the police and when they arrived they found a .380 Colt automatic pistol under the appellant's belt and covered by his coat. At that time there was no clip in the gun or shell in the chamber. However, a clip for the gun was found in his pocket. The appellant told the officers that he had bought the gun a good many years ago.

A number of points first raised by the appellant are to the effect that the evidence is not sufficient to sustain the verdict and judgment as to either charge. With respect to the check charge, it is argued that the evidence discloses that Hancock was not deceived or defrauded since he knew that the check was no good and did not send the flowers to the appellant's wife, and since he knew that the appellant was too drunk to know what he was doing; that Hancock did not endorse or deposit the check or deliver the flowers since he knew before he took it and before the appellant left the store that it was

worthless; and that the check was actually presented to the bank by a notary public, and went to protest, some 30 days after the information was filed in that case. These contentions are based upon a part of the evidence and inferences the appellant would draw from portions thereof. There is, however, ample evidence as to every element essential to this charge. While Hancock's testimony discloses that he became suspicious and had some doubts about the matter before the appellant left the store, it also appears that he did not know that the check was not good, that he did not want to accuse the appellant in that manner, and that ''I thought it was all right.'' Not only is this interpretation of his testimony a reasonable one, but it is supported by the fact that he permitted the appellant to leave with the boxed orchids, the main part of the purchase. His failure to send the remaining flowers to the appellant's wife occurred later, after he had learned that the check was worthless. While Hancock admitted that the appellant appeared to him at the time to be ''pretty well inebriated'' and not ''in too good condition,'' the evidence is far from showing that the appellant was so drunk that he did not know what he was doing or that Hancock was aware of any such fact. The appellant was able to write out the first check, giving the false address thereon, to instruct Hancock to fill out another check with a different false address upon it, and to give his wife's correct name and address in Kansas City. Moreover, it is the appellant's intent which is the most important consideration. The actual presentation of the check by Hancock was unnecessary, under the circumstances, and it was presented by the notary about two weeks before the information was filed. These were questions of fact for the jury and its findings thereon are sufficiently supported by the record.

With respect to the possession of a firearm charge it is argued that the alleged weapon was not a ''deadly weapon'' since it was ''in disassembled form,'' with ''parts missing,'' and without bullets or cartridges. Section 2 of what is known as the ''Dangerous Weapons' Control Law'' (Stats. 1923, p. 695; 1 Deering's Gen. Laws, Act 1970) forbids the possession of certain firearms by one who has been convicted of a felony under the laws of the United States, of the State of California or of any other state or country. There is no evidence that any part of this automatic pistol was missing. While the clip was not in the gun the appellant had it in his pocket. The appellant concedes that the barrel of this gun was less than

12 inches in length, and it was stipulated at the trial that the weapon was "capable of being fired," and that it was meant thereby that if a shell had been in the gun at the time the gun would properly discharge the shell. The evidence is sufficient in this respect.

The information charged that the appellant had previously, on April 24, 1942, been convicted of a felony, "Impersonation of a U. S. Officer," with imprisonment under certain numbers in Leavenworth and Atlanta prisons, and that this judgment had never been reversed or set aside. It is now contended that this charge was not sustained, and that the charge of a former conviction is "illegal and void" since it developed at the trial that this former judgment had actually been reversed in the case of *Ekberg* v. *United States*, 167 F.2d 380. When the district attorney attempted to introduce evidence that the appellant had been previously convicted as alleged in the information appellant's counsel stipulated that he was so convicted, and the appellant personally joined in this admission. It was then stipulated that the appellant was, on April 24, 1942, in the United States District Court at Puerto Rico, convicted of the crime of felony, to wit, impersonation of a United States officer; that judgment was pronounced on that date; that the appellant served a term of imprisonment in the United States penitentiary at Leavenworth and at Atlanta; and "that said judgment has never since been reversed, annulled or set aside." An objection to the introduction of evidence to establish these facts was then made on the ground that the facts had already been established, and was sustained. At the close of the appellant's evidence, he himself tried to raise the contention that the case above cited had reversed his conviction. His counsel assured the judge that he had read this case, that there was only a partial reversal for an error in giving consecutive sentences under different counts, that there was nothing at all wrong with one sentence, and that what happened in connection with that reversal had "not a thing" to do with the issue presented in this case. There is nothing in the case cited which would have the effect here contended for, and the defendant is bound by the stipulations and admissions which were made. It is further contended, in this connection, that the jury should have been advised that the defendant had served an extra period of imprisonment and probation under that former conviction, as was developed after a part of the judgment was

reversed. This was not material to any issue here and no error appears in that connection.

It is next contended that the court erred in giving one instruction, which reads: "You are further instructed that there is no presumption that the defendant, on trial upon a criminal charge, is a person of good character." This was given in connection with another instruction relating to the introduction of evidence as to good character. While this instruction is not inherently wrong (*People* v. *Hill*, 76 Cal. App.2d 330 [173 P.2d 26]), we agree that it should not have been given here. However, we are unable to see how it could have been prejudicial on the record before us, including the defendant's own testimony, the court otherwise gave the usual instructions with respect to all the presumptions of innocence which run in favor of a defendant, and any possible error would not justify a reversal. (Const., art. VI, § 4½.)

Appellant raises several further points under the general contentions that his constitutional rights were violated and that the trial judge was biased and prejudiced against him. The contention that judgment was not pronounced within five days after the verdict is not supported by the record. The verdict upon the plea of not guilty was returned on May 11, 1949. The verdict upon the plea of not guilty by reason of insanity was returned on May 13, 1949. Judgment was pronounced and sentence imposed on May 18, 1949. The court did not refuse to consider an application for probation. Aside from the fact that the appellant was ineligible for probation, he waived an application for probation immediately after the verdicts were returned on the insanity issue. The facts which the appellant insists could have been brought to light through a probation hearing were fully brought out in a statement made to the court by appellant's counsel. The appellant was not without counsel when judgment was pronounced. Judgment was purportedly pronounced on May 17, with his regular counsel present. It was discovered that he had not been properly arraigned for judgment and, on May 18, this proceeding was set aside and judgment again pronounced. At that time appellant's regular counsel was unable to be present and he was represented by another counsel, with his consent expressed in open court.

Bias is attributed to the trial judge in that he remarked that he thought the appellant should have pleaded guilty to these charges. This occurred just before sentence was pronounced and while the judge was reviewing the facts in

response to counsel's plea for leniency. The judge referred to appellant's attitude in court and to his record, including more than 50 arrests with 14 of them on charges of a serious nature. In commenting thereon, the judge stated that if the appellant had had the proper attitude of humility he would have pleaded guilty to these charges. Neither prejudice, bias nor error appears. Complaint is further made that appellant did not receive the transcript in this matter, at the state prison, until more than 90 days after notice of appeal was filed. Because of the situation which developed, this court twice extended the time for filing appellant's opening brief, it was then filed on time, and no prejudice appears.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied November 26, 1949, and appellant's petition for a hearing by the Supreme Court was denied December 12, 1949.