**Joshaway DAVIS a/k/a Joshua Burl Davis a/k/a Joshuaway Burl Davis, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. 1428, 1436.**

Supreme Court of Alaska.

July 28, 1972.

Robert H. Wagstaff, Anchorage, for appellant.

John E. Havelock, Atty. Gen., Juneau, Seaborn J. Buckalew, Jr., Dist. Atty., and Charles M. Merriner, Asst. Dist. Atty., Anchorage, for appellee.

## OPINION

Before BONEY, C. J., and CONNOR and ERWIN, JJ.

BONEY, Chief Justice.

On February 16, 1970, the Polar Bar in Anchorage was burglarized, and a small safe weighing approximately 200 pounds was taken from the back room.

Early the following morning the Anchorage Police Department received word from the Alaska State Troopers that a safe had been discovered along a little-used side road off the Glenn Highway, about 26 miles from Anchorage. Local residents had found the safe lying on its side in brush approximately 100 feet off the main road. The dial and handle were broken and the bottom of the safe had been pried open.

The State Troopers indicated that the discovery had been reported by Jess Straight, whose home was near the site of the discovery. At trial, Straight's stepson, a youth on probation for burglary, testified that he, his stepfather, and his uncle first viewed the safe at about 5:00 p. m. on February 16. The boy told the officers that at about noon the same day he had seen two black men standing alongside a late model metallic blue Chevrolet sedan at the same location. He approached the shorter of the two men and asked if they needed any help. He identified this man as black, mustachioed, wearing a black-brown mackinaw, and carrying a crowbar. Approximately 15 minutes later, the youth again observed the two men and the automobile at the site.

After receiving this report, Anchorage Police Investigator George E. Weaver canvassed the automobile rental companies in the area. He learned that Airway Rent-A-Car had rented a 1969 metallic blue Chevrolet Impala to Joshuaway Davis on February 11, and that Davis had returned shortly after noon on February 16 to extend his rental contract. The Rent-A-Car agent said that Davis had paid an additional $50 from a large roll of bills and two rolls of quarters.

Investigator Weaver then asked the child witness if he would come down to the police station in Anchorage to look at some pictures. The youth studied five pictures of black men for approximately 30 seconds, during which time Investigator Weaver went about other business and did not say anything or show any interest in the inspection. The child then identified Joshuaway Davis as the man to whom he had spoken and Andrew J. Leonard as the other man he had seen near his home. Later the Rent-A-Car agent also selected the picture of Davis from among the five photographs.

On February 18, Investigator Weaver presented an affidavit before a district judge requesting the issuance of a warrant for the search of both the residence of Joshuaway Davis and the rented car in his possession. The affidavit recited that the affiant was competent to testify; that the bar had been burglarized and the safe stolen; that the named child had observed the two black men near his home at approximately noon the same day; that he had spoken to the shorter man and had observed that this man was wearing a brown and

black mackinaw type jacket and carrying a crowbar; that the youth had returned to the area at approximately 5:00 p. m. and had observed the safe; that dust, fibers and markings had convinced the affiant that the safe was the one burglarized from the Polar Bar; that further investigation had disclosed that a 1969 metallic blue Chevrolet had been rented to Joshuaway Davis on February 11; that both the Airways Rent-A-Car agent and the youthful witness at the scene had selected the picture of Joshuaway Davis from among the five mustachioed blacks; and that shortly after noon on February 16, the person identified as Joshuaway Davis had extended his rental agreement and had paid an additional $50 from a large roll of bills and two rolls of quarters. The affiant then stated his belief that the premises and the automobile contained specified items of evidence as well as "other evidence" of the crime. Without further hearings or considerations beyond the affidavit, the district judge issued search warrants for the premises and the automobile.

## I.

Davis first argues that the affidavit of Investigator Weaver did not provide probable cause for the issuance of the warrants because they contain only conclusory statements that a crime had been committed, and because the information given the judge was not the first-hand knowledge of the affiant. We cannot agree with either contention.

In determining whether supportive evidence of a crime exists, the question to be asked is whether the issuing judge was provided sufficient evidence to make an independent finding of probable cause for the issuance of the warrants. The United States Supreme Court has suggested that in making this determination on appeal "great deference" be given the findings of the issuing judge, that he not be "confined by niggardly limitations," and that "probabil-

ity" rather than proof be the standard for probable cause.[1]

██ Applying these standards of review, we cannot agree with Davis that the affidavit contained only the conclusory assertion that the Polar Bar had been burglarized. Investigator Weaver averred that his own investigation "revealed that the safe above described was the one stolen from the Polar Bar." Such a statement enabled the district judge to conclude without inferring undisclosed facts that the affiant had personal knowledge of the stolen safe. There is no informant hearsay connected with the actual commission of the burglary. The scene of the crime was investigated by an officer under the direct supervision of the affiant. The police work described in the affidavit indicates that the police had already invested a substantial number of man hours on the assumption that a crime had been committed. The discovery of the broken safe is itself independently suggestive of a crime.

Investigator Weaver's statements are not mere assertions of belief or suspicions that a crime had been committed. They are facts and circumstances which cumulatively go far toward establishing the existence of a burglary, and toward providing the basis for the judge's independent determination that probable cause existed.

Moreover, a substantial portion of the information given to the district judge was the personal work product of the affiant. He averred that he personally had interviewed the child, and that his own investigation had corroborated the youthful witness' statement that Davis was in possession of a metallic blue Chevrolet shortly after the burglary. He further averred that both the child and the rental agent had selected Davis' photograph from a group of five photographs of adult black males wearing mustaches. The nature and quantity of supportive evidence in the affidavit readily distinguish the present case from the case upon which Davis relies, Giordenello v.

---

1. Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637, 645 (1969) (citations omitted).

United States,[2] where the affidavit contained only conclusory statements.

Davis next contends that the information obtained from the witnesses and alleged in the affidavit was hearsay, and that the affidavit neither alleges the reliability of those informants, nor independently corroborates their statements as required by Aguilar v. Texas[3] and Jones v. United States.[4]

■ While reliance upon hearsay does not change the standards of probable cause, it does add to the burden which must be met by the affiant. The information must be based on the personal observations of the informant, and not his suspicions, beliefs, or some form of double hearsay.[5] Absent an affirmative allegation of personal knowledge of the informant in the affidavit, the facts supplied must be so detailed as to support an inference of personal knowledge.[6] In addition, the judge "must be informed of some of the underlying circumstances . . . from which the [affiant] concluded that the informant . . . was 'credible' or his information 'reliable'."[7] This reliability might be established by demonstrating past reliability,[8] by independent corroboration of incriminating facts by the police,[9] or through the personal identity and involvement of the person giving the information.[10]

■ In the instant case, both statements by the witnesses were independently corroborated by the preliminary police investigation. The officers determined that the man whom the child witness had described had rented a car which the youth had also described. The witness later identified the picture of the man whose name the police had obtained from another source. Similarly, the automobile rental agent described the man and identified a photograph. Each independent identification strengthened the other in the sense of making each witness' information more reliable, and enhancing the probability that his information was credible.

■ Also, the hearsay evidence in the present case can be viewed less suspiciously because it does not offer information about a crime per se, nor does it establish the existence of the crime. It is informative rather than accusative; supplemental rather than essential. The police were independently aware of the commission of a crime. Nothing in the hearsay accused Davis of having committed that crime. The connection between the hearsay descriptions and identifications, and the fact of a crime, is the result of the investigator's deductive reasoning. This reasoning is clearly set forth in the affidavit for the independent scrutiny of the issuing judge.

For these reasons we cannot find that the affidavit for the warrants was deficient.

■ The search warrants obtained from the above affidavit were executed that same day, February 18, 1970. Although Davis contends in a single sentence that the

2. 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

3. 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

4. 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

5. Spinelli v. United States, 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed.2d 637, 644 (1969) ; Aguilar v. Texas, 378 U.S. 108, 113, 84 S.Ct. 1509, 12 L.Ed.2d 723, 728 (1964) ; United States v. Roth, 391 F.2d 507 (7th Cir. 1967).

6. Spinelli v. United States, 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed.2d 637, 644 (1969) ; Aguilar v. Texas, 378 U.S. 108, 113, 84 S.Ct. 1509, 12 L.Ed.2d 723, 728

(1964) ; United States v. Davis, 402 F.2d 171 (7th Cir. 1968).

7. Aguilar v. Texas, 378 U.S. 108, 114–115, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723, 729 (1964) (citations omitted). *See also* United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

8. *E. g.*, Smith v. United States, 123 U.S. App.D.C. 202, 358 F.2d 833, 835 (1966).

9. Spinelli v. United States, 393 U.S. 410, 417–418, 89 S.Ct. 584, 21 L.Ed.2d 637, 644 (1969).

10. Pendergrast v. United States, 135 U.S. App.D.C. 20, 416 F.2d 776, 785, cert. denied, 396 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969) ; McCreary v. Sigler, 406 F.2d 1264, 1269 (8th Cir. 1969).

search was conducted in bad faith, there is no evidence to support that claim. The officers knocked at the door for some time. When no one answered they went across the alley to get a key from the landlord. As they were unlocking the door, Davis opened it from the inside. They showed their warrants, arrested Davis and began the search. The car was towed to the police station in order to conduct a more thorough search for safe insulation fibers and other evidence. There is no evidence or testimony indicating that the officers abused their authority in conducting the search.

Davis argues further, however, that the warrants were not sufficiently particular to justify the seizure of all the items which were involved. The automobile warrant authorized the seizure of

> certain property described as evidence of the burglary and larceny . . . including fibers matching those found at the crime scene, debris matching that found on the safe held as evidence in this case, paint flecks matching paint on the safe, tools and other evidence relating to the commission of the above described offenses. . . .

The premises warrant authorized the seizure of

> certain property described as evidence of the crime of burglary and grand larceny . . . including a cruved [sic] handled crowbar, a brown mackinaw, boots or shoes with safe insulation fibers imbedded therein, and other evidence of the commission of the crime above described. . . .

Noting that the warrants authorized the seizure of "other evidence," Davis contends that both warrants fail to describe

particularly the property to be seized, and thus must fail as general warrants.

■ We cannot agree that this language gives the executing officer "blanket authority" and leaves to him a "subjective determination" of the scope and intensity of the search. We consider that the addition of the "other evidence" language reaffirms rather than broadens the scope of the search authorized by the listed and particularized items.

Stanford v. Texas,[11] cited by Davis, is readily distinguishable. That case turned largely on first amendment considerations. In the instant case, no published materials have been seized, nor ideas repressed. No first amendment threats are posed. Similarly, Rice v. United States[12] is distinguishable from the instant case. In that case the warrant gave absolutely no description of the property to be seized. The reviewing court held it defective for failing to describe "even in the most general way" the items subject to seizure.

■ Davis also argues that the warrants failed to meet the test announced in Bell v. State, where we held that:

> [A]n officer may seize evidence of a crime even though such property is not particularly described in the search warrant when the objects discovered and seized are reasonably related to the offense in question, when the searching officer at the time of the seizure has a reasonable basis for drawing a connection between the observed objects and the crime which furnished the basis for the search warrant, and the discovery of such property is made in the course of a good faith search conducted within the authorized perimeters of the search warrant.[13]

A perusal of the inventoried items[14] seized in the present case convinces us that the

11. 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965).

12. 24 F.2d 479, 480 (1st Cir. 1928).

13. 482 P.2d 854, 860 (Alaska 1971) (footnote omitted).

14. The inventoried items from the two warrants were: one vial suspected marijuana; twenty-one dollars currency; a car contract and receipt; a cigarette holder; a packet of checks and driver's license blanks; a folder of miscellaneous identification; a pair of tan boots; a

evidence seized was all within the limits of our ruling in *Bell*.[15] All of the items used at trial were either particularly described in the warrants or were sufficiently related to the crime, the listed evidence, and the purpose of the search to satisfy the requirements of *Bell*.

## II.

Davis next contends that he was denied his right to counsel during a lineup identification, evidence of which was admitted at trial. Davis further contends that his in-court identification was thereby tainted.

At approximately 10:00 a. m. on February 19, 1970, Assistant District Attorney Richard R. Felton contacted Herbert D. Soll of the Public Defender Agency to inform him that a lineup would be held that morning. While the Public Defender Agency was representing both Davis and Leonard, the other suspect, Soll was not assigned to either suspect. He was filling in at the time and claimed at trial that his recollection of what transpired was hazy because of his limited involvement in the cases.

There is conflict in the court testimony concerning whether Soll was representing both Davis and Leonard during the lineup, or whether he was representing only Leonard. According to Soll's testimony, only Leonard had requested the lineup. While confirming that Davis had been brought into the pre-lineup interview with Leonard, Soll testified repeatedly that he could not recall ever being aware that Davis was going to participate in the actual lineup.

Because the police had some difficulty finding mustachioed blacks for the witnesses to view with Leonard and Davis, the lineup was delayed until about noon. Soll had a prior engagement and was compelled to leave before the other subjects could be assembled. When Felton

said that they would not proceed unless counsel was present, Soll agreed that the lineup which had been requested by Leonard could be held without him, and said he would send someone from his office to observe it. At no time did Soll see any of the participants in the lineup other than the two suspects, Leonard and Davis.

A college student-investigator attended the lineup for the Public Defender Agency. He had been working for the Public Defender Agency for about two months. He was a sociology major at Alaska Methodist University and had no prior legal training. Soll testified that he instructed the student in the kinds of things to watch during the lineup. While certain that these instructions were given with respect to Leonard, Soll again testified that he could not recall that he was even aware that Davis was going to participate in the lineup.

The trial judge made no specific finding on the question of whether Davis was represented by counsel during the lineup. He merely determined

> that in spite of U. S. versus Wade that the defendant's rights were not prejudiced, that the lineup as held by the police was proper; the evidence was shown that it was proper, that Mr. Soll, although not representing either defendant was there, although he may have on recollection believe [sic] that he was only there because of the other defendant, Leonard, Mr. Felton indicated that he was aware of both defendants and there was nothing to show that the lineup wasn't proper. I—I'm not following U. S. versus Wade technically or fully but I think the Supreme Court of the United States has receded somewhat from that very strict position.

We cannot agree with the ruling of the trial judge that the rights afforded a sus-

knotted silk stocking; a bag of a white substance; a pair of brown trousers; a pair of light tan trousers; two pairs of brown coveralls; a Colt .45 automatic revolver with no serial number or clip; a plaid overcoat; four bags of vacuum cleaner debris; a piece of rope; four bags of paint samples; three floor mats;

one tire iron; and three pieces of cardboard.

15. We need not decide, for those items used at the burglary trial, whether or not the holding of *Bell* represents the upper limit on permissible seizures.

pect by United States v. Wade [16] can be discounted so easily. In the companion case, Gilbert v. California,[17] the same right to counsel at lineup identifications was made applicable to the states through the fourteenth amendment.

However, we need not decide whether Davis was represented by counsel during the lineup because we find that the courtroom identification derived from a source independent of that lineup, and that the introduction of the lineup identification at trial was harmless error.

In *Wade* the Supreme Court said that the courtroom identification cannot be excluded

> without first giving the Government the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification.[18]

The test to be applied is the same as that announced in Wong Sun v. United States:[19] whether " 'the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " [20] The

*Wade* court then lists a number of factors to be considered in applying this test.[21]

In determining whether or not the courtroom identification was independent of the lineup, we must be mindful of the distinction between the "independent source" exception to the *Wade-Gilbert* right to counsel, and the "totality of circumstances" test which the same court applied in Stovall v. Denno [22] to pre-*Wade-Gilbert* lineups.

■ We feel compelled to draw a clear distinction between the two approaches because in this case the trial judge appears to have applied a "totality of circumstances" approach,[23] and because a number of other jurisdictions have obfuscated the "distinction between the protection offered by *Wade-Gilbert* right to counsel and the totality-of-circumstances criteria against which the courts measure a violation of due process in identification confrontations." [24] In evaluating evidence used at trial from a lineup without counsel, we are not merely concerned with the fundamental fairness of that lineup. We are also concerned with the need for counsel to be present in order to evaluate the circumstances and prepare his argument at trial sufficiently to provide the defendant with his sixth amendment right to confront identifying witnesses.[25]

16. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967).

17. 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed. 2d 1178 (1967).

18. 388 U.S. 218, 240, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149, 1164 (1967).

19. 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

20. United States v. Wade, 388 U.S. at 241, 87 S.Ct. at 1939, 18 L.Ed.2d at 1165, quoting Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441, 455 (1963), quoting Maguire, Evidence of Guilt 221 (1959).

21. Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of

the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup.
388 U.S. at 241, 87 S.Ct. at 1940, 18 L.Ed.2d at 1165 (footnote omitted).

22. 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L. Ed.2d 1199, 1206 (1967).

23. See the quoted passage from the trial transcript in text accompanying note 16 *supra*.

24. Note, The Right to Counsel at Lineups: Wade and Gilbert in the Lower Courts, 36 U.Chi.L.Rev. 830, 833 n. 14 (1969).

25. In *Wade* the court noted:
Insofar as the accused's conviction may rest on a courtroom identification in fact the fruit of a suspect pretrial identification which the accused is helpless

The fact that the Court did not make *Wade-Gilbert* retroactive suggests that they envisioned a change from prior identification requirements and protections. While the Court in *Stovall* said that it would consider the totality of circumstances surrounding the identification,[26] the same Court in *Wade* said that the circumstances and conduct of the lineup was only one of at least seven factors to be considered in applying the independent origin test.[27]

We note in the instant case that the youthful witness had a prior opportunity to observe and talk with Davis at the Glenn Highway location, that he identified a picture of Davis prior to the lineup, and that there was no significant lapse of time between the alleged act and the lineup identification such that the lineup would have significantly refreshed and influenced his courtroom identification. We further note that there is no discrepancy between the pre-lineup description by the child and the appearance of Davis. The youth had not erroneously identified any other person prior to the lineup, nor had he failed to identify Davis on any prior occasion. The earlier identifications coupled with the absence of such negative factors persuade us that the courtroom identification was independent of the lineup.

■ We also conclude that the use of the lineup evidence was harmless error. In Love v. State,[28] we adopted a harmless error test which focuses on the substantiality of the effects of the error.[29] However, we also recognized at the time that the United States Supreme Court had rejected a substantiality test in Chapman v. California [30] for all cases involving federal constitutional protections. Such is the case before us today; in order to hold harmless any error in the use of the lineup evidence, we "must be able to declare a belief that it was harmless beyond a reasonable doubt." [31]

In the instant case, the identification of Davis was crucial to the prosecution's case. However, we have already determined that the identification was independently established by the youth's encounter on the road, and by the later photographic identification. Moreover, it does not appear that the prosecution placed much emphasis on the lineup identification at trial. While a picture of the lineup was identified by the youth on the witness stand, that picture was never introduced as evidence. On the other hand, Davis' own counsel did dwell, in front of the jury, on the point of whether the youth's courtroom identification was independent of the lineup identification. Finally, the trial judge made no comment on any of the identification evidence.

Based on the independence of the identification evidence and the insignificant part the lineup played in the trial, we are

to subject to effective scrutiny at trial, the accused is deprived of that right of cross-examination which is an essential safeguard to his right to confront the witnesses against him.
388 U.S. at 235, 87 S.Ct. at 1936, 18 L.Ed.2d at 1162.

26. 388 U.S. at 302, 87 S.Ct. at 1967, 18 L.Ed.2d at 1206.

27. 388 U.S. at 241, 87 S.Ct. at 1939, 18 L.Ed.2d at 1165. See note 21 *supra* for a listing of the particular factors to be considered.

28. 457 P.2d 622 (Alaska 1969).

29. We stated that test to be the same as that adopted in Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed.2d 1557 (1946), "that the judg-

ment was not substantially swayed by the error." 457 P.2d at 631. In Roberts v. State, 458 P.2d 340, 342 (Alaska 1969), that test was stated as whether the error "appreciably affect[ed] the jury's determination of the appellant's guilt."

30. 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

31. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710 (1967); *accord*, Bargas v. State, 489 P.2d 130, 133 (Alaska 1971); Spaulding v. State, 481 P.2d 389, 392 (Alaska 1971); Fresneda v. State, 458 P.2d 134, 145 (Alaska 1969); Rubey v. City of Fairbanks, 456 P.2d 470, 477–478 (Alaska 1969); Thessen v. State, 454 P.2d 341, 350 (Alaska 1969).

convinced that the little exposure the jury had to the fact of the lineup was overshadowed by the other identification evidence, and had no probable effect in establishing the prosecution's case before the jury. Hence, we are able to declare that we believe beyond a reasonable doubt that any error was harmless error.

### III.

Davis next contends that the court erred in denying his motion for judgment of acquittal at the end of the prosecution's case. He argues that there was no evidence connecting him to the crimes of burglary and larceny; that at best he was placed at the scene of the later discovery of the safe; and that he was never seen in possession of the safe. Davis' motion at trial was based on the contention that mere circumstantial evidence of possession is insufficient to go to the jury or to sustain a conviction of burglary or larceny.

It is well settled in his court that when an appellant challenges the sufficiency of the evidence supporting a verdict and judgment

> the judge must take the view of the evidence and the inferences therefrom most favorable to the state. If he determines that fair minded men in the exercise of reasonable judgment could differ on the question of whether guilt has been established beyond a reasonable doubt, then he must submit the case to the jury.[32]

In order to determine whether fair-minded men in the exercise of reasonable judgment could differ on the question of guilt, it is necessary to trace the path of reasoning which any fair-minded man must traverse to arrive at the conclusion of guilt of larceny and burglary beyond a reasonable doubt.

There is no direct evidence that Davis was at any time in possession of the safe. On the other hand, viewing the evidence "most favorable to the state," the circumstantial evidence of possession is quite persuasive. Davis was seen at the site of the broken safe with a crowbar in hand, and the fibers in the trunk of his car were the same substance which insulated the stolen safe. If this were an appeal from a charge and conviction for possession of stolen goods, we would have no difficulty concluding that this case "illustrates the high degree of certainty which can be achieved through circumstantial evidence,"[33] and that because fair-minded men of reasonable judgment could differ on the question of guilt, the facts should be submitted to the jury.

But in this case it is not sufficient to infer possession alone in order to convict. The defendant is charged with larceny and burglary. The fair-minded men exercising reasonable judgment must infer the crimes of larceny and burglary from the inference of possession. Hence, this is a case which requires the pyramiding of an inference of theft upon an inference of possession. In the past we have cautioned that "building inference upon inference without adequate data" would present the very grave danger of a criminal conviction founded on speculation.[34] The facts of the instant case require a cautious analysis.

The evidence of possession of the safe in the instant case, though circumstantial, is comparable in persuasiveness to any direct evidence short of the defendant being caught with the safe in hand. Because the evidence of possession is so persuasive, we cannot conclude that the present case demands that double level of inference "without adequate data" which would present a danger of conviction

---

32. Bush v. State, 397 P.2d 616, 618 (Alaska 1964) (footnote omitted). *Accord*, Jordan v. State, 481 P.2d 383, 387 (Alaska 1971); Allen v. State, 420 P.2d 465, 467 (Alaska 1966); *see* Tarnef v. State, 492 P.2d 109, 116–117 (Alaska 1971).

33. Jordan v. State, 481 P.2d 383, 387 (Alaska 1971).

34. Davis v. State, 369 P.2d 879, 882–883 (Alaska 1962).

founded on speculation. Thus we hold that the only significant inference required by the jury was the inference of burglary and larceny from possession.

■ Wigmore suggests that what is minimally required to permit an inference of theft from possession is that the possession be exclusive, unexplained, and fairly close in time to the commission of the crime.[35] The majority of jurisdictions which follow this rule have held that the questions of whether the possession was sufficiently recent and sufficiently exclusive to justify an inference of guilt are questions of fact for the jury.[36] Thus, according to our standard of sufficiency of the evidence, the judge should rule on the question of exclusivity as a matter of law only when the evidence that possession was not exclusive is so persuasive that fair-minded men exercising reasonable judgment could not differ with that conclusion.

Davis relies primarily upon Davis v. State,[37] where we held that where all the evidence of guilt is circumstantial, it is incumbent upon the state to produce evidence of circumstances excluding every reasonable hypothesis but that of guilt.[38] Davis argues that the evidence showing the presence, at the site where the safe was discovered, of another man whose role in the criminal act was never positively determined cast doubt upon the exclusivity

of possession sufficient to require a granting of his motion for judgment of acquittal.

■ We cannot agree with Davis. The language in Davis v. State upon which he relies was specifically rejected in Jordan v. State.[39] We conclude that fair-minded men exercising reasonable judgment could conclude that Davis had the necessary exclusivity of control.

We hold, therefore, that the trial judge did not err in refusing to grant the motion for judgment of acquittal.

### IV.

Davis next urges that the trial judge erred in not permitting the defendant to cross-examine the child witness concerning the nature of his prior record. Recognizing that the majority of cases on impeachment of a witness by a juvenile record is against him,[40] the appellant wishes to distinguish his case. He claims not to be interested in impeaching the youth, but rather desires to show bias, prejudice or motive in that the witness was under pressure to shift suspicion from himself to another.

In Whitton v. State [41] the trial court refused to permit cross-examination of a witness to determine whether he was motivated to testify for the state by an expectation of immunity for his own criminal acts. We held that "when the primary objective of cross-examination is to estab-

---

35. IX J. Wigmore, Evidence § 2513, at 422 (3d ed. 1940).

36. *E. g.*, State v. Downing, 185 Or. 689, 205 P.2d 141, 145 (1949). *See generally*, IX J. Wigmore, Evidence § 2513, at 422 (3d ed. 1940).

37. 369 P.2d 879 (Alaska 1962).

38. *Id.* at 882.

39. 481 P.2d 383, 386–387 (Alaska 1971).

40. *E. g.*, In re Nash, 61 Cal.2d 491, 39 Cal.Rptr. 205, 393 P.2d 405 (Cal.1964) (juvenile record not admissible to impeach prosecuting witness absent special circumstances as where witness is an exploited prostitute in trial charging pimping and pandering) ; Martinez v. Avila, 76 N.M. 372, 415 P.2d 59 (1966) (juvenile

record not to be elicited even where law permits cross-examination concerning "acts of misconduct" for impeachment) ; State v. Wilson, 1 Wash.App. 1001, 465 P.2d 413 (1970) (juvenile record inadmissible because not "crime" as rules of evidence required for impeachment). *See generally*, cases cited in IIIA J. Wigmore, Evidence § 980, at n. 6 (rev. ed. 1970) ; C. McCormick, Handbook of the Law of Evidence § 43, at n. 16 (1954) ; Annot., 147 A.L.R. 443, 446 (1943). *But see*, State v. Searle, 125 Mont. 467, 239 P.2d 995 (1952) (statement in juvenile proceeding inconsistent with statement as prosecuting witness admissible without violation of statutory ban of use "against the child").

41. 479 P.2d 302 (Alaska 1970).

lish bias, the fact that it may also be shown that the witness committed wrongful acts does not violate Civil Rule 43(g) (11) [b]." [42] We recognized that because the human tendency toward bias is so common, "reasonable latitude must be allowed in the cross-examination of a witness . . . ." [43]

On the other hand the basis for the trial judge's decision was Rule 23 of the Alaska Rules of Children's Procedure, [44] which provides:

> No adjudication, order, or disposition of a juvenile case shall be admissible in a court not acting in the exercise of juvenile jurisdiction except for use in a pre-sentencing procedure in a criminal case where the superior court, in its discretion, determines that such use is appropriate.

In support of his argument against the lower court interpretation of Rule 23, Davis cites Wigmore:

> A judgment, finding, or proceeding of delinquency in a juvenile court is by modern statutes forbidden to be used 'against the child' in any other court. It would be a blunder of policy to construe these statutes as forbidding the use of such proceedings to affect the credibility of a juvenile when appearing as witness in another court. [45]

Wigmore illustrates his point with an example of a delinquent girl with nymphomaniac tendencies who testifies as prosecutrix in a case of rape or indecent liberties.

The instant case would appear to place the interest of protecting the anonymity of a youthful transgressor in conflict with the interest of affording the defendant an adequate opportunity to confront adverse witnesses. However, while the judge did not permit questions directly disclosing the fact that the child had a prior record, our reading of the trial transcript convinces us that counsel for the defendant was able adequately to question the youth in considerable detail concerning the possibility of bias or motive. Counsel alluded both to possible ulterior motives of the child and to the possibility that the child's identification arose from apprehension. The youth responded that he felt no anxiety or apprehension about the safe being discovered near his home. While this denial was possibly self-serving, the suggestion was nonetheless brought to the attention of the jury, and that body was afforded the opportunity to observe the demeanor of the youth and pass on his credibility.

[12] Given these indirect references, we cannot find error in the refusal to permit the introduction of direct evidence of the boy's record.

## V.

From a separate conviction, Davis brings another appeal which we have consolidated for purposes of decision.

Among those items seized during the search of the defendant's house was a Colt .45 automatic found under a dresser in one of the bedrooms. No clip was discovered but bullets were located in the closet of this same room. Davis was indicted for being a felon in possession of a concealable firearm, and was found guilty in a separate trial on that issue.

Davis first argues that the trial court erred in denying his motion to suppress the gun as illegally seized. He contends that the gun fails to come within the limits of Bell v. State. [46] We agree with Davis that the gun was not "reasonably

---

42. *Id.* at 317 (footnote omitted).

43. *Id.*

44. That rule is cross-referenced to AS 47.-10.080(g) which in part provides:
 The commitment and placement of a child and evidence given in the court are not admissible as evidence *against the minor* in a subsequent case or proceedings in any other court . . . . (Emphasis added.)

45. IIIA J. Wigmore, Evidence § 980, at 834 (rev. 3d 1970) (emphasis and cross-reference omitted).

46. 482 P.2d 854, 860 (Alaska 1970). See discussion in accompanying text and notes 13–15 *supra.*

related" to the burglary which was the crime for which the search was conducted. However, our inquiry does not end with such a conclusion. The general rule is that in conducting a search pursuant to a valid warrant only the items particularly described may be seized.[47] There are, however, exceptions to that rule. Our holding in *Bell* constitutes such an exception for it authorizes the seizure of an object not listed in the warrant but reasonably related to the offense in question when the officer has a reasonable basis for relating the object to that crime.[48] By way of dicta in *Bell*, we recognized other exceptions to the general rule requiring particularity.[49] Among those exceptions was one which authorizes[50] an officer who is conducting a good faith search pursuant to a valid warrant to seize objects in plain view[51] which he has a reasonable basis to believe are related to another crime which he has probable cause to believe is being committed in his presence.[52]

Investigator Weaver testified at trial that he had found and seized the gun, and that he was aware of Davis' being a previously convicted felon. The gun had no serial number. Finding a gun with no serial number in the bedroom of the apart-

ment of a man he knew to be a convicted felon gave the searching officer a reasonable basis to believe that the crime of felon in possession, to which the gun was reasonably related, was being committed in his presence. We therefore conclude that the trial court did not err in denying Davis' motion to suppress the gun.

Davis next argues that his possession of the gun was not sufficiently established. Davis' landlord testified at the trial that Davis was living in the apartment occasionally with his wife, occasionally with another woman, and that Davis received numerous visitors. He further testified that a woman who had been living there for approximately two months moved out about the time that Davis was arrested. He said that the woman was the type of person whom he would expect to carry a gun. Davis then testified that the woman had lived in the room where the gun was found, and that on one occasion he had seen her with a gun.

█ Davis argues that the standard of exclusivity required by Davis v. State[53] should also be required before there is evidence sufficient to send a charge of felon in possession to the jury. However guilt of this latter crime does not require

---

47. U.S.Const. Amend. IV; Alaska Const. art. I, § 14.

48. *Accord*, Gurleski v. United States, 405 F.2d 253, 257–260 (5th Cir. 1968), cert. denied, 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769 (1969).

49. 482 P.2d at 859.

50. The scope of the search authorized by the search warrant may not be exceeded.

51. As was stated in Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564, 582 (1971):

 An example of the applicability of the "plain view" doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character.

52. Aron v. United States, 382 F.2d 965, 973–974 (8th Cir. 1967); Seymour v. United States, 369 F.2d 825, 827 (10th Cir. 1966), cert. denied, 386 U.S. 987,

87 S.Ct. 1297, 18 L.Ed.2d 239 (1967); Porter v. United States, 335 F.2d 602, 607–608 (9th Cir. 1964), cert. denied, 379 U.S. 983, 85 S.Ct. 695, 13 L.Ed.2d 574 (1965); United States v. Eisner, 297 F.2d 595, 597 (6th Cir.), cert. denied, 369 U.S. 859, 82 S.Ct. 947, 8 L.Ed.2d 17 (1962). *See also* United States v. DePugh, 452 F.2d 915, 921 (10th Cir. 1971); United States v. Henkel, 451 F.2d 777, 780–781 (3d Cir. 1971); United States v. Honore, 450 F.2d 31, 33 (9th Cir. 1971); Anglin v. Director, Patuxent Institution, 439 F.2d 1342, 1346–1348 (4th Cir.), cert. denied, 404 U.S. 946, 92 S.Ct. 302, 30 L.Ed.2d 262 (1971); Johnson v. United States, 110 U.S.App.D.C. 351, 293 F.2d 539, 540 (1961), cert. denied, 375 U.S. 888, 84 S.Ct. 167, 11 L.Ed. 2d 118 (1963); State v. Johnson, 292 A.2d 903 (Conn.1972). *Contra*, United States v. Dzialak, 441 F.2d 212, 216–217 (2d Cir.), cert. denied, 404 U.S. 883, 92 S.Ct. 218, 30 L.Ed.2d 165 (1971).

53. 369 P.2d 879 (Alaska 1962).

**1038**

actual possession. "Custody" or "control"[54] is sufficient.[55]

Davis also argues that because no clip was found for the automatic revolver, it could not be used and therefore cannot be called a weapon under the law. We take judicial note of the fact that the absence of a clip is not a mechanical defect rendering the pistol inoperable. The weapon could still be single-loaded with the bullets that were close at hand.

Little more need be said than that case law almost unanimously supports the propositions that conviction of "felon in possession" may be based on circumstantial evidence of possession or custody,[56] and that a revolver need not be fully assembled or immediately capable of firing in order to qualify as a weapon.[57] The purpose of the felon in possession statute is to prevent the concealment and use of firearms in violent crime. It is immaterial whether the gun is loaded and ready for immediate use. If such were the requirement, the law could easily be circumvented by maintaining custody of an unloaded gun while hiding the bullets until needed.[58]

We find no reversible error in the rulings of the court below, and we affirm the verdicts.

BOOCHEVER, J., not participating.

RABINOWITZ, Justice (dissenting in part, concurring in part).

I concur in the court's holding that Davis' conviction of the crime of felon in possession should be affirmed. On the other hand, I cannot agree that Davis' convictions of the crimes of burglary not in a dwelling and grand larceny can be upheld. For my view, the trial court erred in granting the prosecution's motion for a protective order which had the impact of precluding Davis' counsel from effectively cross-examining a key juvenile witness for the government.

Given Davis' constitutional rights, under both the Alaska and Federal Constitutions, to confront adverse witnesses against him and the quality of the prosecution's totally circumstantial case against Davis, the trial court's erroneous curtailment of cross-examination of this crucial juvenile witness cannot be characterized as harmless error under either the Love v. State, 457 P.2d 622 (Alaska 1969), or Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967), differing standards for determination of harmless error.

In the case at bar, counsel for Davis sought to show on cross-examination that at the time of trial the state's juvenile witness was still under probation supervision for the crime of burglary. Counsel for Davis wanted to elicit this fact for the purpose of showing the witness's bias as well as his motive in giving testimony for the prosecution. In regard to the cross-examination of a witness as to his bias or motive, in RLR v. State, 487 P.2d 27, 44 (Alaska 1971), we said that:

"[G]reat liberality should be given defense counsel in cross-examination of a prosecution witness with respect to his motive for testifying." Cross-examination to show bias because of expectation

54. Knowledge is a prerequisite to possession, control or custody. Egner v. State, 495 P.2d 1272 (Alaska 1972). Davis raises no contention that he lacked the necessary knowledge.

55. AS 11.55.030. Cf., State v. Porter, 201 Kan. 778, 443 P.2d 360, 363 (Kan.), cert. denied, 393 U.S. 1108, 89 S.Ct. 919, 21 L.Ed.2d 805 (1968) ; People v. Britton, 134 App.Div. 275, 118 N.Y.S. 989, 993 (Sup.Ct.1909), "If physical possession was required, the words 'custody, or control' are meaningless, and plainly, those words are not used synonymously with 'possession.' . . . One may . . . exercise control over, what is not in his physical possession. . . ."

56. E. g., State v. Clipston, 473 P.2d 682, 687 (Or.App.1970).

57. People v. Ekberg, 94 Cal.App.2d 613, 211 P.2d 316 (Cal.App.), cert. denied, 339 U.S. 969, 70 S.Ct. 988, 94 L.Ed. 1377 (1949).

58. See State v. Quail, 5 Boyce 310, 92 A. 859 (Del.Ct.Gen.Sess.1914).

of immunity from prosecution is one of the safeguards essential to a fair trial, and undue limitation on such cross-examination is reversible error without any need for a showing of prejudice. (footnotes omitted)[1]

In the case at bar, the majority believes that Davis' constitutional right of confrontation was satisfied because his counsel "alluded both to possible ulterior motives of the child and to the possibility that the child's identification arose from apprehension." In my view, this falls far short of the confrontation rights guaranteed Davis. Vague speculations concerning ulterior motives and the possibility that the juvenile witness's identification of Davis arose from apprehension are hardly adequate substitutes for bringing home to the jury the fact that the juvenile witness was on probation for burglary at the time he testified. The right of confrontation required that Davis be permitted to show that the witness was on probation for burglary and also encompassed the right to inquire into the circumstances of the witness's relations with the police.

I find the majority's reliance upon Rule 23, Alaska Rules of Children's Procedure, inapposite here. The accused's fundamental right to confront adverse witnesses against him outweighs any interest in protecting a juvenile witness from disclosure of his prior adjudication of delinquency and from disclosure of the disposition order.[2] In light of this court's stated preference for liberality of cross-examination of a prosecution witness with respect to his motive or bias in testifying, I reach the conclusion that in the case at bar Davis' rights of confrontation were improperly curtailed.[3] I therefore conclude that Davis must be given a new trial as to the separate offenses of burglary not in a dwelling and grand larceny.

---

1. *See also* Doe v. State, 487 P.2d 47, 58 (Alaska 1971) where we said that the right of liberal cross-examination of a witness as to his bias is well established. In Whitton v. State, 479 P.2d 302, 317 (Alaska 1970), in recognizing that reasonable latitude must be allowed in the cross-examination of a witness, we said that "when the primary objective of cross-examination is to establish bias, the fact that it may also be shown that the witness committed wrongful acts does not violate Civil Rule 43(g) (11) [b]."

2. Rule 23, Alaska Rules of Children's Procedure, provides:
 No adjudication, order, or disposition of a juvenile case shall be admissible in a court not acting in the exercise of juvenile jurisdiction except for use in a presentencing procedure in a criminal case where the superior court, in its discretion, determines that such use is appropriate.
 Rule 23, Alaska Rules of Children's Procedure, is more expansive than its statutory counterpart, AS 47.10.080(g), which in part provides:
 The commitment and placement of a child and evidence given in the court are not admissible as evidence against the minor in a subsequent case or proceeding in any other court . . . .
 As we said in RLR v. State, 487 P.2d 27, 37 (Alaska 1971), "These social policy considerations [dictating anonymity in children's proceedings] are based on empirical propositions which may be false and have not been tested." (footnote omitted)

3. I am in agreement with Professor Wigmore's view:
 It would be a blunder of policy to construe these statutes [AS 47.10.080(g) and similar statutes] as forbidding the use of such proceedings to affect the credibility of a juvenile when appearing as a witness in another court.
 IIIA J. Wigmore, Evidence § 980, at 834 (rev. ed. 1970).