Joshuaway DAVIS, Appellant,

v.

STATE of Alaska, Appellee.

Calvin WIDERMYRE, Appellant,

v.

STATE of Alaska, Appellee.

Nos. 117, 119.

Supreme Court of Alaska.

March 13, 1962.

James K. Tallman, of Bell, Sanders & Tallman, Anchorage, for appellants.

George N. Hayes, Dist. Atty., and James C. Merbs, Asst. Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

One of the questions presented for our determination in this case is whether there was sufficient evidence of possession by the appellants of recently stolen property and sufficient other circumstantial evidence to convict them of the crimes of burglary and larceny.

The appellants Davis and Widermyre were jointly indicted, tried by jury and convicted on two counts, one charging them with the burglary of the dwelling house of Adam Hood, with intent to steal therein, and the other charging them with the larceny of Hood's console television set, automatic shotgun and Arvin electric heater. Both crimes were alleged to have been committed on October 30, 1960, at Anchorage. At the conclusion of the state's case in chief, appellants moved for judgment of acquittal as to both counts. The court denied the motion, and the trial proceeded. Neither of the appellants took the witness stand, but they did introduce evidence on their behalf. At the conclusion of this evidence, appellants' counsel stated that he wished to renew his motion for judgment of acquittal and would submit his motion in writing. This motion was denied, and the appellants appealed separately from the judgment of conviction entered against each. The appeals have been consolidated for review.

The parties agree that the state's evidence of guilt against the appellants was entirely circumstantial. The facts pertinent to the question stated, as we have been able to glean them from the record, are as follows:

While Adam Hood was on a week's visit in Fairbanks, a Mrs. Moore living diagonally across the street from Hood's Anchorage home, was awakened at three o'clock on the morning of October 30 by the barking of her dog. There was sufficient light from the moon and a street lamp to enable her to see a man go into the Hood house and then to see two men come out. As the men walked past her house she obtained a side view of the one nearest to the house and observed that he wore a leather coat and cap and had horn rimmed glasses. The other man was on the far side from her, and so she was unable to identify him. About ten or fifteen minutes later she was aroused again by the sound of a car motor. This time she watched two men carry a television set out of the Hood house and place it into a car backed up to the Hood front door. She did not know whether these men were the same two she had seen a short time before. It is to be noted that she had known the appellant Davis for about five years; also he had worked for her husband; but she had never seen Widermyre prior to the night in question. She made her identification of Widermyre from only two "mug shots" shown her at the police station—one of Widermyre and the other of Davis. She did not identify the car further than to say that it was clean looking, and had a red

body with a white top. She could not see clearly enough to get the license number of the car as it drove away, although she could see the numerals. She did not report the incident to the police. The record discloses that Davis owned a red 1955 Mercury with a white top and that he washed the car quite frequently while employed as a lot boy by a car dealer.

Hood testified that on November 4, 1960, a friend, Williams, came to him at Fairbanks with a shotgun he claimed to have purchased and sought advice on how to operate it. This was the shotgun listed in the indictment. Hood recognized it as his own, and surmising that his home had been burglarized, returned the same day to Anchorage. There at his house he discovered that the other two items listed in the indictment —the television set and the Arvin heater— were gone. Also missing were two other guns, several fishing rods and reels, some shotgun shells, a bedspread and an outboard motor. Hood had no sure knowledge that any of the missing articles, except perhaps the television set, were in his house when he left to go to Fairbanks; and he admitted that the three items described in the indictment could have been taken at different times. Williams apparently surrendered the shotgun to Hood in Fairbanks but he did not state from whom he had obtained it. The state did not produce Williams at the trial, though Hood testified that he was in the area.

About one week after Hood returned from Fairbanks some unidentified person called him on the telephone to inform him that he would find his television set at a closed-down nightclub in Anchorage. Hood went to the nightclub and recovered the set.

Davis and Widermyre knew each other and had been seen around town together both by Mr. Hood and the car dealer for whom Davis had worked.

On November 15, the police obtained search warrants and contacted the appellants. The officers first went to the house where Davis was staying and, in his presence, searched "his bedroom and the premises." In the attic above the living room they found two fishing rods and reels belonging to Hood. Davis at first professed total ignorance concerning this fishing gear but later that same day at the police station stated that he had found the gear on the ground outside Hood's house but did not know to whom it belonged. When the officers named the other items reported by Hood as missing and asked Davis where they were, he replied "I didn't take all that stuff."

The officers next proceded to the residence of Henry W. Burton, stepfather of the appellant Widermyre who was renting and occupying one room in the Burton home. The officers searched this room and also the rest of the house and the adjoining garage. On an open shelf in the garage the officers found an Arvin electric heater identified by Mr. Hood as being the heater missing from his house. Mr. and Mrs. Burton used the garage regularly as a work shop and in it kept their car and all kinds of garden and carpentry tools. At the time of the discovery of the heater by the police the garage was also available to a man who came there to use Mr. Burton's power saw. The Burtons testified that Widermyre never used the garage, nor did he have any right to use it.

Widermyre was not present during the search of the Burton premises, but he was later questioned by the police about the heater and the other missing items. He denied any knowledge of them whatsoever.

■ Since the appellants are challenging the sufficiency of the evidence to support the verdict and judgment, which is presented by the motions for acquittal, this court may consider only those facts heretofore recited which are most favorable to the state and such reasonable inferences as the jury may have drawn therefrom.[1] Those facts as to the appellant Davis are that he was acquainted with his

---

1. United States v. O'Brien, 174 F.2d 341, 343 (7th Cir. 1949); Hobbs v. State, No. 46, 363 P.2d 357 (Alaska, 1961).

co-defendant and the prosecuting witness Hood; that he owned a red 1955 Mercury car, with a white top, which he kept looking clean; that a clean red car with a white top was used by two unidentified men to haul away a television set from Hood's house in the early morning of October 30, 1960; that about two weeks later he was found to have in his possession some fishing gear evidently stolen from the Hood residence at some unspecified date and not listed in the indictment against the appellants; that he first denied any knowledge of the fishing gear but later claimed that he had found it on the ground outside Hood's home; and that when questioned about the other missing items including those listed in the indictment replied, "I didn't take all that stuff."

■ The state concedes that all the evidence it relied upon to show that Davis was guilty of burglary and larceny was circumstantial. That being the fact, it was incumbent upon the state to produce evidence of circumstances which excluded every reasonable hypothesis except that of guilt. In other words, the circumstantial evidence had to be such as to exclude every reasonable theory consistent with Davis' innocence.[2] Evidence of the possession by Davis of the stolen fishing gear, standing alone, was insufficient to sustain the conviction. It had to be coupled with other circumstances connecting Davis with the crimes charged.[3]

■ It must be remembered that the fishing gear was not listed in the indictment as one of the articles alleged to have been stolen and that none of the articles so listed were ever found in the possession of Davis. The state did not establish when the fishing gear was stolen, if it was stolen, nor did it obtain a statement from Davis as to when he found the gear. His inconsistent statements regarding his possession of the fishing gear was evidence of guilty knowledge on his part that the gear was stolen, but not of the larceny and burglary charged in the indictment in this case.[4]

■ It is our opinion that the other circumstances proved by the state failed to place Davis at the scene of the crime, a necessary element of proof in this case for the reason that there is no proof of complicity or of a conspiracy between Davis and Widermyre to burglarize and steal at the Hood home. To infer that Davis was present when the burglary and larceny took place, the jury would first have had to infer that the red and white car in which the television set was hauled away belonged to Davis.[5] That would be building inference upon inference without adequate data

2. State v. Boudreau, 111 Vt. 351, 16 A.2d 262 (1940).

3. Battaglia v. United States, 205 F.2d 824, 827 (4th Cir. 1953); State v. Weinstein, 224 N.C. 645, 31 S.E.2d 920, 156 A.L.R. 625 (1944); People v. Spillman, 309 N.Y. 295, 130 N.E.2d 625 (1955); State v. Mevis, 53 Wash.2d 377, 333 P.2d 1095 (1959).

4. See State v. Jester, 45 Wash.2d 613, 277 P.2d 331 (1954).

5. Even the trial judge sensed some flaw in the proof when he commented during his consideration of the motion for judgment of acquittal as follows:
"* * * As I see it is this. That Davis is in possession of property identified as stolen by its owner. He has given a statement which may or may not be true. Under the circumstances it is possibly quite likely not true. He is

not identified as being at the scene and there is observed at the scene when the property is taken, the car that generally bears the same characteristics that his car does. However, this is not shown to be his—that is, I think on the facts which must be considered in a circumstantial case that there isn't sufficient showing that it's his car that would complete a chain of circumstances. So I, even giving the State, the State's evidence —looking at it in the best light I doubt very much if a Jury could conclude that his car was at the scene, and then the question is is [sic] whether he was at the scene. I think taking the State's case in the best light there isn't sufficient evidence to place him at the scene, even though he may be an associate from time to time of the defendant Widermyre. * * *"

and lead to a conviction upon speculation.[6] The motion for judgment of acquittal as to Davis should have been granted.

■ In the case of the appellant Widermyre we are faced with a somewhat different situation. He was identified as one of the two men seen coming out of the Hood residence, a place in which he had no right to be, about 10 or 15 minutes prior to the time that two unidentified men returned to the scene of the crimes charged and hauled away Mr. Hood's television set. While there is law to the effect that evidence of the accused seen lurking about the burglarized premises is admissible against him,[7] it alone is not sufficient to establish guilt.[8]

■ Here again the state has placed its chief reliance for a conviction upon the fact that the police found Hood's missing electric heater in the garage adjoining the house where Widermyre lived. This evidence, the state argues, constituted proof that Widermyre was in possession of some of the stolen property, an important circumstance to be considered in connection with the burglary and larceny of which he is accused. The state's argument completely ignores the legal requirement that the possession be exclusive. Possession to be exclusive must be to the exclusion of all persons not party to the crime.[9] Mere constructive possession, as would be the case where the possession is not actual or personal, is not enough.[10] If other persons have equal right and facility of access with the accused to the place where stolen goods are discovered, the possession not being exclusive or personal is of no weight as evidence.[11]

■ The state's own evidence showed that the house where Widermyre stayed was the home of, and occupied by, his mother, and that many other people "could have been up to the stove" [heater] in the garage before the officers got to it. There was no evidence whatsoever in the record that Widermyre had access to the garage, let alone exclusive access thereto, or that any of his personal possessions were stored therein. The evidence in this case just does not point inevitably to the exclusive possession by Widermyre of the Arvin electric heater. We cannot lend ourselves to sending the accused to the penitentiary on the kind of circumstantial evidence of guilt produced aaginst him by the state. The motion for judgment of acquittal as to Widermyre should likewise have been granted.

The foregoing conclusions at which we have arrived render it unnecessary for us to consider other questions presented by the appellants in their briefs. The separate judgments entered below against the appellants are reversed for the reasons stated in this opinion.

6. See State v. Dennis, 177 Or. 73, 159 P.2d 838, 841, 161 P.2d 670 (1945); 1 Wharton, Criminal Evidence § 88 (12th ed. 1955).

7. People v. Wieland, 10 Cal.App. 519, 102 P. 828 (1909).

8. United States ex rel. Argento v. Jacobs, 176 F.Supp. 877, 883 (N.D.Ohio 1959), holding that the mere fact that a person is seen in the vicinity of a murder is not sufficient evidence of his complicity in the crime to uphold a conviction therefor.

9. Weisman v. United States, 1 F.2d 696 (8th Cir. 1924); State v. Costin, 46 Wyo. 463, 28 P.2d 782 (1934).

10. People v. Barnes, 311 Ill. 559, 143 N.E. 445 (1924); State v. Drew, 179 Mo. 315, 78 S.W. 594 (1904); Scott v. State, 121 Neb. 232, 236 N.W. 608 (1931); State v. Boudreau, 111 Vt. 351, 16 A.2d 262 (1940).

11. State v. Schimmels, 105 Wash. 151, 177 P. 685 (1919).