John JORDAN, Appellant,

v.

STATE of Alaska, Appellee.

No. 1166.

Supreme Court of Alaska.

Feb. 25, 1971.

William H. Babcock, Sitka, Thor P. Ulvestad, Seattle, Wash., for appellant.

W. H. Hawley, Dist. Atty., Ketchikan, G. Kent Edwards, Atty. Gen., Juneau, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR, and ERWIN, JJ.

## OPINION

CONNOR, Justice.

After trial by jury, appellant was convicted of assault with intent to kill one Mac Saling, in violation of AS 11.15.160.[1] Saling was an assistant harbormaster at Ketchikan, Alaska. Appellant was the owner of a trolling boat moored at Ketchikan, Alaska, at the time of the incident which resulted in appellant's conviction.

1. *Assault with intent to kill or commit rape or robbery.* A person who assaults another with intent to kill, or to commit rape or robbery upon the person assault-ed, is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.

On the morning of June 13, 1968, at about 8:00 a. m., Saling ascended from Thomas Basin, a small boat harbor in Ketchikan, to the ramp where his Volkswagen bus was parked. He found the door to the bus partly open and on the seat was a flashlight which had not been there when he had parked the vehicle about fifteen minutes earlier. The flashlight was old and worn, the lens had been painted white, and the butt was fastened with tape. Saling shook the flashlight, heard something sliding in it, and noticed that the switch was broken. He thought that the flashlight had been placed there as a joke, but he left it in the vehicle at that time.

About 10:00 a. m. that day Mr. Saling again parked his vehicle near Thomas Basin and grasped the flashlight, intending to dispose of it. At that point he saw an ambulance with its light flashing, he ran to give assistance, and as he was running the flashlight exploded. Smoke and debris rose high into the air. Pieces of Mr. Saling's body were found on the roof of a two-story building which stood nearby. Mr. Saling lost all of his left hand, part of his left arm, part of his right hand, and was disemboweled by the explosion. Nevertheless, after long hospitalization he recovered and testified at appellant's trial.

At trial a pattern of circumstantial evidence was adduced. Witnesses placed appellant near Thomas Basin on the morning in question. He was described as looking about in all directions. By his own statements both out of court and while on the witness stand, appellant admitted being in the vicinity of Mr. Saling's vehicle at about the time it was parked there, though he denied actually seeing the vehicle, which he knew by sight.

Appellant stated that when he was in the Thomas Basin area he was carrying a brown paper shopping bag containing an unboxed roll of aluminum foil. He explained his having the aluminum foil by stating that he left his boat in another harbor earlier, thinking he was taking with him his garbage sack, that he discovered his error, but decided nevertheless to continue to walk to Thomas Basin in order to go shopping. However, appellant was only about 100 feet from his boat when he discovered his error. He easily could have returned for his garbage rather than carry the aluminum foil a considerable distance round the town.

The evidence showed that defendant purchased a five-cell "KWIK-LITE" flashlight from the Service Auto Parts retail store in Ketchikan, on April 17, 1968. This flashlight is manufactured by Fulton Manufacturing Co. of Wauseon, Ohio, packaged by Ballkamp, and distributed by "NAPA" or National Auto Parts Association. Appellant signed a receipt on the day that he purchased this particular flashlight.

At trial a special agent of the Federal Bureau of Investigation testified as an expert witness. His testimony was that the end cap and extra bulb holder found in the debris from the explosion had the same observable physical characteristics as the Fulton five-cell "KWIK-LITE" flashlights, manufactured by Fulton and available in the FBI laboratory, and that they had the same physical characteristics as one of the State's exhibits, which was a flashlight purchased by the Ketchikan Police Department from Service Auto Parts store in Ketchikan, using the same part number as the part number on the invoice signed by the appellant. The FBI agent also testified that the debris in evidence was more consistent with a smooth flashlight than a twelve-sided flashlight. Additionally, testimony elicited at trial indicated that the end cap of the Fulton five-cell "KWIK-LITE" was unique. None of the evidence about the characteristics of these various flashlights was disputed at trial.

Appellant testified at his trial (his first trial resulting in a mistrial), that he had realized between his first and second trial that the flashlight he purchased was twelve-sided. Through testimony of Fulton and NAPA officials, it was established that such twelve-sided flashlights could not

have been available in Ketchikan, Alaska, at the time of appellant's purchase. This testimony was buttressed by business records. It was proved that twelve-sided flashlight tubes were not used by Fulton to fill NAPA orders until February 2, 1968, when the first shipment of twelve-sided flashlights was made. Additionally it was proved that the kind of flashlight sold to Service Auto Parts in Ketchikan, later sold to the appellant, was shipped from Seattle on February 7, 1968, but that these flashlights were obtained from 1966 NAPA stock. The manager of the Service Auto Parts store in Ketchikan testified that the five-cell "KWIK-LITE" sold to the appellant was the only one of that type his store ever sold previous to the bombing. It was also established that the Ketchikan store was the exclusive Alaska jobber for NAPA products.

By the same receipt which established appellant's purchase of the flashlight, it was also shown that he purchased "Top Line" acid core solder. This solder was also purchased by the Ketchikan Police Department, so that it could be compared in the FBI laboratory with solder found in the debris from the explosion. Through testimony of three FBI expert witnesses, who performed spectrographic and neutron activation analysis of the two solders, it was shown that the solder in the debris came from the same original source as the solder purchased by the Ketchikan Police Department. The particular batch of solder which was the common source of the two samples was unique in the experience of one of the testifying agents.

In the opinion of another FBI expert witness, the adhesive tape found in the debris came from a roll of tape of the same manufacturer and of the same width as certain tape found on the appellant's trolling boat. The yarn counts and other characteristics of the tape did not vary between the samples in question.

It was shown that appellant had experience as a powderman in his past, and that only a basic knowledge of explosives would have been necessary to construct a device such as the flashlight bomb in question. Through FBI expert witnesses it was shown that the force of the explosion was consistent with a high order explosive such as dynamite, that sodium nitrate was obtained from the debris and that sodium nitrate is an essential element of dynamite. Another witness testified that he saw dynamite aboard appellant's boat in approximately March or April of 1968.

One Arthur W. Almquist testified that he had agreed to give the appellant several electric blasting caps, that he put them in a paper sack and left them at a liquor store owned by Almquist for the defendant to pick up there. A clerk at the liquor store testified to receiving the caps in a package from Mrs. Almquist and giving them later to the appellant. Almquist testified that he gave another set of an electric blasting cap with leg wires, from the same box from which he obtained the caps he gave to the appellant, to a Ketchikan Police Department officer, and that the caps were identical to the ones he gave to the appellant. An FBI expert witness concluded from an examination of the leg wires that the ones found in the debris and the ones obtained from Mr. Almquist were identical.

Appellant was arrested at Still Bay on Prince of Wales Island. This is a somewhat remote place and has a difficult entrance channel. He stated that he had been expecting the police since the explosion. He later stated that this was one the police could not pin on him. He also told somewhat different stories about what happened to his flashlight. At one point he stated that it was stolen, but later he stated that he lost it in one of three bars, that he had inquired about it, but had not located it. There was testimony which contradicted this statement. It appears that appellant told Mr. Almquist that he got rid of the caps because he was a possible suspect in the criminal investigation of the explosion. However, this statement was made previous to the time that he was actually under suspicion by the police.

Evidence of motive for the crime was adduced. Appellant had expressed a good deal of animosity toward Mr. Saling in the past. In February of 1968 appellant had pointed a loaded rifle at Mr. Saling after Mr. Saling had enforced certain mooring regulations against the appellant. Appellant felt that Mr. Saling was picking on him and had threatened to "get even" with him.

From a verdict of guilty and a judgment of conviction, appellant brings this appeal.

### I.

■ Appellant's first point is that the court erred in refusing to give a requested instruction on circumstantial evidence. The requested instruction was:

"The State has conceded that all the evidence relied upon to show that the defendant was guilty of assault with intent to kill was circumstantial. That being the fact it was incumbent upon the State to produce evidence of circumstances which excluded every reasonable hypothesis except that of guilt. The circumstantial evidence had to be such as to exclude every reasonable theory consistent with the defendant's innocence."

To support the giving of this instruction appellant cites *Karn v. United States*, 158 F.2d 568, 11 Alaska 225 (9th Cir. 1946), and *Davis v. State*, 369 P.2d 879 (Alaska 1962). Appellant fails to mention that *Karn v. United States* is no longer good law in the Ninth Circuit, having been disapproved in *Holland v. United States*, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150 (1954). See *Kaplan v. United States*, 329 F.2d 561 (9th Cir. 1964), and cases discussed therein. Nor does appellant discuss *Allen v. State*, 420 P.2d 465 (Alaska 1966), where we followed *Holland v. United States*, *supra*, and dispensed with the necessity of giving the instruction here requested by appellant. In any event, neither *Karn* nor *Davis, supra*, actually dealt with jury instructions as such.

Appellant has not presented any cogent reasons for our altering the rule an-

nounced in *Allen v. State, supra*. Accordingly, this point on appeal appears to be lacking in merit. Because it is unsupported by meaningful legal argument, we need not consider this point further.

### II.

■ Appellant claims that the trial court erred in giving instruction No. 20, which reads:

"Evidence has been introduced that defendant made certain exculpatory statements outside of the courtroom explaining his actions to show that he was innocent of the crime charged in the indictment. Evidence contradicting such statements has also been introduced. If the jury finds that the exculpatory statements were untrue, and that the defendant made them voluntary (sic) with knowledge of their falsity, the jury may consider the statements as circumstantial evidence of defendant's consciousness of guilt."

At trial appellant's counsel objected to this instruction on the ground that appellant had made no exculpatory statements. He argued that for this reason the instruction was prejudicial to him. There were, of course, exculpatory statements. On appeal appellant expands his contention and argues that because no expert witness testified that such exculpatory statements, when untrue and made with knowledge of their falsity, should be considered as circumstantial evidence of guilt, there was no basis for the instruction.

Either appellant's counsel is apparently ignorant of a well-known rule of evidence, 2 J.Wigmore, Evidence, § 278(2), p. 120 (3rd ed. 1940), or he is asking us to adopt a most unusual rule, without citation of authority and without more than an assertion that such a rule ought to be. This point on appeal is clearly lacking in merit.

### III.

The next specification of error is that the court should have granted appellant's

motion for a judgment of acquittal at the close of the entire case.

Appellant first cites Karn v. United States, *supra*, which, as pointed out earlier, is no longer good law. Appellant's brief fails to mention that the rule laid down in Davis v. State, 369 P.2d 879 (Alaska 1962), that in determining a motion for judgment of acquittal the court must, in a circumstantial evidence case, determine whether the evidence excludes every reasonable hypothesis but that of guilt, was superseded in Martinez v. State, 423 P.2d 700 (Alaska 1967), which holds that the test thereafter to be employed is that expressed in Bush v. State, 397 P.2d 616 (Alaska 1964). In *Bush* it is said:

"On a motion for a judgment of acquittal the judge must take the view of the evidence and the inferences therefrom most favorable to the state. If he determines that fair minded men in the exercise of reasonable judgment could differ on the question of whether guilt has been established beyond a reasonable doubt, then he must submit the case to the jury." 397 P.2d at 618 (footnotes omitted).

The other cases cited by appellant do not appear to be in point.

The bulk of appellant's argument is of the type one would make to a jury, not an appellate court. Actually the case here was a very strong one. If anything it illustrates the high degree of certainty which can be achieved through circumstantial evidence. Such evidence can produce a configuration of proof so interrelated that the whole acquires convincing properties not derivable from a mere summation of each atomistic part.

Viewing the evidence as we must, it appears that the motion for judgment of acquittal was properly denied.

### IV.

■ Appellant moved for a new trial on the ground of juror misconduct. In support of the motion was attached an affidavit by Velda Gangle, who was a member of the jury which convicted appellant. The affidavit states:

"I was one of the members of the jury which tried John Jordan in a criminal case in Sitka, between March 17, and March 27, 1969. When the jury was in closed session deliberating upon the facts in this case, one of the members of the jury, who was associated with commercial fishing, was examining the scraps of metal placed in evidence by the prosecution. This juror said that one of the pieces of metal closely resembled a homemade trolling spoon. Two other fishermen on the jury also examined the pieces of metal, and the three jurymen determined that the pieces of metal were parts of a homemade fishing spoon, and so stated to the rest of the jurors."

The significance of this would be that at one point while he was on the witness stand appellant testified that the reason he had solder on his boat was that he sometimes made homemade trolling spoons. We have had to search the record for this ourselves, as counsel failed to make any reference to it in his brief.

Appellant cites four cases in support of his claim that this misconduct warrants a new trial. Womack v. State, 101 Tex.Cr. R. 130, 274 S.W. 588 (1925),[2] Winslow v. State, 98 S.W. 241 (Tex.Cr.App.1906), State v. Burke, 124 Wash. 632, 215 P. 31 (1923), and State v. Everson, 166 Wash. 534, 7 P.2d 603 (1932). These cases concern the introduction into the jury room of personal knowledge of facts in issue, or extraneous physical material. The situation here, however, is that of jurors examining an exhibit which was properly taken to the jury room under Criminal Rule 27(f), which provides:

"Upon retiring for deliberation the jury shall take with it any exhibits, except depositions, that may have been intro-

2. Counsel erroneously cites this as Walmack v. State, 278 S.W. 588.

duced into evidence which the court deems proper."

Appellant did not object to any of the exhibits going to the jury room at the close of the case.

In passing upon the effect of the alleged misconduct, several matters are important. First, the Gangle affidavit does not say that the belief expressed by the three fishermen-jurors was either critical or persuasive in the formulation of the ultimate verdict of guilty. Second, the fact that portions of the debris appeared to be parts of homemade trolling spoons to some of the jurors does not mean that the jury necessarily drew an inference that those items were necessarily property which had ever belonged to appellant. No evidence was produced at trial to show that these portions of the debris matched any property possessed by appellant. The jury may just as well have inferred that even if these were pieces of homemade trolling spoons they were not shown to be the property of appellant. If this were the case, the impact of the expressed belief of some of the jurors would be so minimal as to be hardly worthy of consideration.

■ It would be almost impossible for jurors to put aside completely the information or knowledge they may have gained over a lifetime of experience. Expressions of belief about matters as to which a juror possesses claimed or actual expertise are almost inevitable in jury deliberations. Just because views or beliefs of this kind are expressed does not mean that the rest of the jurors will necessarily be stampeded into a verdict. This seems to be especially true where the item in question is merely one out of many pieces of circumstantial evidence which the jury must weigh in arriving at its verdict. That the jurors express opinions, based on their individual backgrounds and experience, does not taint the deliberations. Hankins v. State, 115 Neb. 350, 213 N.W. 344 (Neb.1927); Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483 (1943); State v. Billberg, 229 Iowa

1208, 296 N.W. 396 (1941); Karner v. Kansas City Elev. R. Co., 82 Kan. 842, 109 P. 676 (1910). Because adequate grounds were not shown, the trial court did not abuse its discretion in denying the motion for new trial.

Affirmed.