**Gary Howard JACOBSON,
Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 2478.**

Supreme Court of Alaska.

July 2, 1976.

---

John F. Rosie, Fairbanks, for appellant.

David Mannheimer and Harry L. Davis, Asst. Dist. Attys., Fairbanks and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, ERWIN and BURKE, Justices.

## OPINION

RABINOWITZ, Justice.

Gary Jacobson was charged with the crime of operating a motor vehicle while under the influence of intoxicating liquor. After trial by jury in the district court, Jacobson was found guilty and sentenced to imprisonment for a period of 120 days and fined $1,000.[1] Jacobson then appealed to the superior court, which affirmed his district court conviction. The instant ap-

---

1. The district court suspended 100 days of the 120 period of imprisonment as well as $500 of the $1,000 fine which had been imposed.

peal has been brought from a superior court's affirmance.

At approximately 2 a. m. on the morning of November 18, 1973, Alaska State Trooper Robin Lown noticed a vehicle parked on the edge of Davis Road in Fairbanks. Two wheels of the vehicle were on and two wheels were off the pavement of Davis Road. The engine and heater of the parked vehicle were running, the lights were off, and Jacobson was observed sound asleep on the front seat, his head and shoulders on the passenger side and his feet and legs below the steering wheel.[2]

Trooper Lown woke Jacobson and asked him for his driver's license and vehicle registration. Detecting an odor of alcohol, Lown asked Jacobson to step outside the vehicle and perform certain field sobriety tests; the results of these tests led Trooper Lown to conclude that Jacobson was under the influence of intoxicating liquor. Jacobson was then placed under arrest for violation of AS 28.35.030.

The primary issue in this appeal concerns the question of what the phrase "operates" means as used in AS 28.35.030. This statute reads, where pertinent:

> A person who, while under the influence of intoxicating liquor . . . operates or drives an automobile . . . in the state upon conviction is punishable by a fine of not more than $1,000, or by imprisonment for not more than one year, or by both.

■ In his fourth specification of error, appellant alleges that the district court erred in holding, as a matter of law, that he had operated a motor vehicle. Although AS 28.35.030 does not contain a definition

of the term "operates", various jurisdictions with statutes similar to Alaska's are in accord that the words "operate" and "drive" have differing connotations and refer to different acts. Several of these jurisdictions define operate as requiring proof of some motion of the automobile, however slight. Others have held that "operate" means to do something with the mechanism of the vehicle that would put it in motion, including the necessary step of starting the engine.[3] As a general proposition, it appears that "to operate" includes a larger class of activities than "to drive." While one who drives a vehicle must necessarily in that process operate it, the reverse is not necessarily so.

Appellee argues that of the essentially three types of drunk driving statutes, namely, those which prohibit "driving" while intoxicated; those which ban "operating" a vehicle while intoxicated; and those which "forbid a person to be in charge (or control) of a vehicle while intoxicated," Alaska's statute falls in that class of statutes where mere exclusive control of a stationary vehicle while intoxicated is a crime. In support of its argument that AS 28.35.030 should be given a broad construction, the state relies upon the definition of "operator" found in Title 13 of the Alaska Administrative Code, Chapter 13 AAC 10.200, which provides, in pertinent part:

> In the traffic regulations and in AS 28.35.030 . . . 'operator' means a person who drives or is in actual physical control of a vehicle or who is exercising control over or steering a vehicle being towed by a motor vehicle.[4]

---

2. According to Trooper Lown's testimony, Jacobson ". . . was laying over, so his head and shoulders and the upper part of his body extended from the driver's seat into the passenger's seat." Lown further testified that Jacobson's feet and legs ". . . were near the controls of the vehicle, near the accelerator and the brake."

3. *See generally* Annot., 47 A.L.R.2d 570, 577–82 (1956); Note: *An Analysis of*

*Drunken Driving Statutes in the United States,* 8 Vand.L.Rev. 888, 888–92 (1955).

4. In concluding that AS 28.35.030 is a "control" as well as a "driving" type of drunk driving statute, we reject Jacobson's attempts to distinguish the definition of "operator" furnished by 13 AAC 10.200 on the basis that "operator" is a noun, while the word "operates", as employed in AS 28.35.030, is a verb.

■ Support for the state's position is found in the decisions of several sister states construing statutes similarly worded to Alaska's administrative rule. In *State v. Webb,* 78 Ariz. 8, 274 P.2d 338 (1954), the relevant statute made it unlawful " . . . for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle." There the conviction of Webb, who was found asleep in his truck while intoxicated (which was idling with its lights on in a traffic lane) with both hands and his head resting on the steering wheel, was upheld. The court in *Webb* said:

> An intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public. The danger is less than that involved when the vehicle is actually moving, but it does exist. While at the precise moment defendant was apprehended he may have been exercising no conscious volition with regard to the vehicle, still there is a legitimate inference to be drawn that the defendant had of its own choice placed himself behind the wheel thereof, and had either started the motor or permitted it to run. He therefore had the 'actual physical control' of that vehicle, even though the manner in which such control was exercised resulted in the vehicle's re-

maining motionless at the time of his apprehension.[5]

*See also Nicolls v. Commonwealth,* 212 Va. 257, 184 S.E.2d 9 (1971); *State v. Pritchett,* 173 A.2d 886 (Del.Super.1961); *State v. Ruona,* 133 Mont. 243, 321 P.2d 615 (1958).[6] We therefore conclude on the basis of the foregoing that AS 28.35.030 prohibits a person who is under the influence of intoxicating liquor being in actual physical control of a vehicle with its motor running.

■ Our construction of AS 28.35.030 disposes of Jacobson's first three specifications of error which are all closely related to the previously discussed fourth specification of error. In his first specification of error, Jacobson contends that the district court erred in denying his Criminal Rule 12(b)(2) motion to dismiss the complaint. The gist of appellant's attack here is that the complaint failed to charge each essential element of the offense of driving under the influence of intoxicating liquor. The complaint which was filed by Trooper Lown reads in part that Gary Jacobson "did unlawfully operate a motor vehicle, to-wit: a 1973 Chevrolet pickup, Alaska license LT 77399, within the State of Alaska, to-wit: Davis Road, while under the influence of intoxicating liquor. All of which is contrary to and in violation of AS 28.35.030. . . . "[7] Given our in-

---

5. *State v. Webb,* 78 Ariz. 8, 274 P.2d 338, 340 (1954).

6. *State v. Ruona,* 133 Mont. 243, 321 P.2d 615, 618 (1958), involved a similar fact situation to the case at bar. There the court said, "[A]s long as one were physically or bodily able to assert dominion, in the sense of movement, then he has as much control over an object as he would if he were actually driving the vehicle."

7. The following textual material also appeared on the face of the complaint:

> This complaint is based on the personal knowledge of the complaining witness, who came upon the Defendant's vehicle parked on the side of the road. The Defendant's vehicle was idling and the Defendant was found to be laying across the front seat with his torso extending from the driver's seat

into the passenger's seat. The Defendant's feet were adjacent to the control pedals of the vehicle. The Defendant was aroused and found to have a moderate odor of alcohol about his breath and person, blood shot and watery eyes, slurred speech and upon exiting the vehicle was found to sway. The Defendant was requested to preform [sic] field sobriety tests which showed him to be unsteady on his feet and uncoordinated [sic] in his movements. Standing at attention the defendant swayed from left to right. He became confused performing the finger to nose·test striking his nose with the wrong hand. The Defendant could not maintain balance standing on one foot, nor could he walk heel to toe.

> The defendant was administered the Breathalyer Examination, the results indicating .16% blood alcohol.

terpretation of AS 28.35.030, we hold that the complaint was not defective.[8]

■ Jacobson's second basic contention is that the district court erred in denying his motion to suppress, (which was grounded upon the theories that the state trooper lacked probable cause to arrest him and that there was no crime being committed in the officer's presence). AS 12.25.030 provides, in part, that a peace officer may make a warrantless arrest of a person for a crime committed or attempted in his presence.[9] Since, based on his observations the trooper had probable cause to believe Jacobson was intoxicated and in actual physical control of the vehicle, the officer possessed the authority to arrest Jacobson without a warrant for violation of AS 28.35.030.

■ In his third specification of error, Jacobson argues that the district court erred in denying his motion for judgment of acquittal.[10] District Judge Miller, in denying the motion, stated in part, "It's my ruling that as a matter of law, to be in an automobile with the motor running, alone, is enough to come under the operating language of the statute." In light of our reading of AS 28.35.030 as prohibiting an intoxicated person from being in actual physical control of the vehicle, we find no error in the district court's ruling on the motion for judgment of acquittal.[11]

Appellant Jacobson next states that the superior court committed reversible error when it denied his requested instruction concerning circumstantial evidence. Jacobson's requested instruction read, in part, as follows:

You are not permitted upon circumstantial evidence alone or when the case of the prosecution rests substantially on circumstantial evidence, to find the Defendant guilty of a crime charged unless the proven circumstances not only are consistent with the hypothesis that a Defendant is guilty of the crime charged but also the proven circumstances exclude every reasonable hypothesis except that of guilt.[12]

In its instructions to the jury the district court advised that before a verdict of guilty could be returned the jury must find beyond a reasonable doubt Jacobson was under the influence of alcohol to such an extent that his ability to operate the vehicle was appreciably impaired. Reasonable doubt was defined as " . . . the kind of doubt which would make you hesitate to act in serious and important aspects of your own affairs." Regarding circumstantial evidence, the jurors were instructed that "The law makes no distinction between circumstantial evidence and direct evidence as to the degree of proof required for conviction, but respects each for such convincing force as it may carry and accepts each as a reasonable method of proof."

■ In light of the district court's instructions which we have alluded to, we are of the view that no error was committed by the trial court in refusing to give

8. *Compare* Crim.R. 7(c) which provides in part that "[t]he indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." *See State v. Thomas,* 525 P.2d 1092 (Alaska 1974) ; *Spight v. State,* 450 P.2d 157 (Alaska 1969).

9. *See Howes v. State,* 503 P.2d 1055 (Alaska 1972) ; *McCoy v. State,* 491 P.2d 127 (Alaska 1971) ; *Miller v. State,* 462 P.2d 421 (Alaska 1969).

10. Appellant contends that once the district court granted his motion to strike because of a *Miranda* violation (this point will be covered subsequently), the prosecution had not adduced sufficient evidence to withstand the motion for judgment of acquittal.

11. In support of his contentions pertaining to the motion for judgment of acquittal, Jacobson argues that the state has a special burden of proof when its evidence is circumstantial. This point will be discussed *infra.*

12. The requested instruction went on to state :
To express this rule in another way, the circumstantial evidence must be such as to exclude every reasonable theory consistent with the defendant's innocence as to the particular crime charged.

Also, if the evidence is suspectible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject the other which points to his guilt.

Jacobson's requested circumstantial evidence instruction. Appellant's requested instruction was based on *Jennings v. State,* 404 P.2d 652 (Alaska 1965) and *Davis v. State,* 369 P.2d 879 (Alaska 1962). In *Allen v. State,* 420 P.2d 465, 468 (Alaska 1965) (footnote omitted), we addressed " . . . the *Davis* test so far as it requires an instruction to the jury that circumstantial evidence must be of such a nature as to be inconsistent with any other reasonable theory than that of guilt." We went on to state (footnote omitted), "Such an instruction is unnecessary and may well be confusing and therefore should be dispensed with. Proper instructions on the standards for reasonable doubt should suffice." *Allen* was followed by *Jordan v. State,* 481 P.2d 383, 386 (Alaska 1971). In this later decision, we noted that *Davis* never actually addressed the issue of jury instructions as such and approved of the *Allen* decision's rejection of the necessity of giving a *Davis*-type circumstantial evidence instruction. In *Jordan* we cited *Holland v. United States,* 348 U.S. 121, 139–40, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954), where the United States Supreme Court, noting several cases using a *Davis*-type circumstantial evidence instruction, asserted that " . . . the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect."[13]

Appellant also claims that it was error for the district court to prevent counsel, in closing argument, from arguing the state's ability to produce better evidence which would tend to show that he was not under the influence of intoxicating liquor.[14] More particularly, Jacobson's point here is that the state had the ability to make a video tape of him performing field sobriety tests. The record shows that during cross-examination of Trooper Lown the following exchange took place:

Q: Trooper Lown, was there a video tape made of the defendant, to verify the statements you're talking about?

A: No.

Q: You didn't have—you know, when you took him to the station, there is a video tape camera there, isn't there?

A: Yes.

Q: And you could have had him perform the tests that you're talking about before a video tape, couldn't you?

A: Obviously, if there wasn't one made, there was some reason why there wasn't. Probably there was no tape available or the machine was broken, because it is a practice that is observed by state troopers that whenever a person is arrested under this charge, a video tape is made, unless there is no tape or the machine is broken.

Q: So there really is no evidence to substantiate your oral statement that he swayed?

A: Other than my statement, no.

■■■ Counsel for appellant, in his closing argument started to argue the ability of the state to have video taped his client at the police station.[15] The state objected and the district judge ruled that:

The only evidence about that machine was that it was most probably not func-

---

13. *See also Des Jardins v. State,* 551 P.2d 181 (Alaska, 1976); *Daygee v. State,* 514 P.2d 1159, 1167 (Alaska 1973); *Tarnef v. State,* 492 P.2d 109, 116 (Alaska 1971).

14. The trial court instructed the jury that a reasonable doubt may arise either from the evidence produced or from lack of evidence. The jury was also instructed that "[e]vidence is to be estimated not only by its own weight but also according to the evidence which it is in the power of one side to produce and the

other to contradict; and, therefore, if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory evidence was within the power of the party to produce, the evidence offered should be viewed with distrust."

15. Appellant's counsel had stated, "So they continue on and he takes him to the police station, where there's the ability to have a video tape." At this point counsel for the state objected.

tioning or that they were out of tape. If you doubted that was true, then you could have subpoenaed the police records, which would have shown what the operation and repair records of the machine were.

We are of the view that the trial court's ruling was erroneous in light of the officer's testimony on cross-examination. Officer Lown never asserted that he knew the machine to be broken or lacking tape. At most, he tried to explain the lack of tape by speculating that probably there was no tape or the machine was broken because if the machine were operative and had a tape, a tape would have been made. Since by the officer's own testimony it was normal practice to make such tapes, counsel's argument concerning the reasons for the departure from normal practice was within the range of permissible final argument.[16] Further study of the record has convinced us that, given the quality of the state's evidence, the error of refusing to allow appellant's counsel to argue the lack of videotape to the jury was prejudicial error under the standard of *Love v. State,* 457 P.2d 622, 630 (Alaska 1969).

Appellant Jacobson also asserts that the evidence was insufficient to support a finding that he was under the influence of intoxicating liquor at the time of the arrest or at the time he operated the motor vehicle.[17]

In its instruction to the jury, the district court stated that the state had to prove beyond a reasonable doubt that Jacobson did operate a motor vehicle and that at the time he operated the vehicle he was under the influence of alcohol to such an extent that his ability to operate the vehicle was appreciably impaired. The jurors were further instructed that the term "operate," as used in the instructions, ". . . means to start, to cause to function, or work, to put or keep functioning or working."

Given these instructions and our study of the evidence in the case, we are of the view that fair-minded men in the exercise of reasonable judgment could differ on the question of whether guilt had been established beyond a reasonable doubt and that the case was properly submitted to the jury.[18]

Reversed and remanded to the superior court with directions to remand to the district court for a new trial.[19]

BURKE, Justice, with whom ERWIN, Justice, joins, dissenting in part, concurring in part.

I respectfully dissent from that portion of the majority opinion holding that it was reversible error for the trial court to prevent counsel, in closing argument, from attacking the State's failure to video tape the defendant following his arrest. Assuming, *arguendo,* that the court erred at all, I would hold that the error was harmless under the standard of *Love v. State,* 457 P.2d 622 (Alaska 1969).

Otherwise, I concur.

16. *Compare Veal v. Newlin, Inc.,* 367 P.2d 155 (Alaska 1962) ; *City of Kotzebue v. Ipalook,* 462 P.2d 75 (Alaska 1969). *Cf. Reader v. Ghemm Co.,* 490 P.2d 1200, 1205 (Alaska 1971). *See, e. g., Krek v. Briel,* 3 Ariz.App. 126, 421 P.2d 301 (1966).

17. This separate specification of error is related to appellant's third specification of error regarding which we held that the district court did not err in denying appellant's motion for judgment of acquittal. The distinction between the two specifications lies in the fact that the third specification emphasized primarily appellant's construction of AS 28.35.030, while the specification now under consideration focuses on the alleged lack of an evidentiary basis for conviction.

18. *Gray v. State,* 463 P.2d 897, 905 (Alaska 1970) ; *Allen v. State,* 420 P.2d 465 (Alaska 1966) ; *Jennings v. State,* 404 P.2d 652 (Alaska 1965) ; *Bush v. State,* 397 P.2d 616, 618 (Alaska 1964).

19. Our disposition of the issues discussed in the draft makes unnecessary resolution of the issues pertaining to the trial court's admission into evidence of the alcohol influence report.