RENDERED: JUNE 26, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0524-MR

ERIC CLAYWELL          APPELLANT

v.      APPEAL FROM CLINTON CIRCUIT COURT
HONORABLE DAVID WILLIAMS, JUDGE
ACTION NO. 19-CR-00060

COMMONWEALTH OF KENTUCKY          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, L. JONES, AND KAREM, JUDGES.

KAREM, JUDGE: Eric Claywell appeals from his March 10, 2025, conviction for driving under the influence ("DUI"), arguing that there was insufficient evidence he had operated or intended to operate his vehicle while under the influence. After review of the briefs, record, and law, we affirm.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

On September 8, 2019, at approximately 5:52 p.m., Claywell drove to Junction Station, a gas station and convenience store in Albany, Kentucky. Claywell parked along the back edge of the store's parking lot, pulling past the pavement until the front of his vehicle was in the grass, approaching an embankment with only the rear tires remaining on the asphalt. Security camera footage showed that Claywell remained in the vehicle for two and a half minutes. He then exited the vehicle, seemingly steadying himself against its side, and entered the store before returning to the driver's seat approximately four minutes later. In the store, the clerk observed that Claywell was staggering, she smelled alcohol on his person, and she had to help him insert his card into the payment machine. Concerned that Claywell was unfit to drive, the store clerk called 9-1-1.

A responding officer arrived at Junction Station approximately fourteen minutes after Claywell parked. The officer observed Claywell's vehicle pulled onto the grass, a position that he asserted was not the norm for that location;[1] Claywell was sitting in the driver's seat with the keys in the ignition; Claywell smelled strongly of a "hops beverage"; and an open beer can was found in the cupholder (the only alcohol container observed by the officer, although he

---

[1] The video footage showed two other vehicles parked in the lot, neither of which were on the grass.

did not search the vehicle). Claywell admitted to the officer that he had been drinking but claimed that someone had dropped him off at Junction Station and that he was waiting to be picked up. Claywell refused to exit the vehicle when requested by the officer, and the officer then placed him under arrest. Claywell was not cooperative. The officer had to physically remove him from the vehicle. Claywell resisted being handcuffed and being put in the cruiser, and he was combative during transport.

Claywell was indicted in November 2019 for operating a motor vehicle under the influence of alcohol, fourth offense.[2] A trial was held on February 14, 2025, wherein the Commonwealth's witnesses, the store clerk, and the responding officer, testified as set out above. At the close of the Commonwealth's case, Claywell moved for a directed verdict, arguing the Commonwealth had not established that he operated or intended to operate his vehicle while under the influence. The Circuit Court denied the motion.

Claywell then testified, asserting that he drove to Junction Station with the intention of parking his vehicle there overnight and having a date drive them to Tennessee for the evening. He claimed that he only imbibed after he

---

[2] Claywell was also indicted on charges of third-degree terroristic threatening, third-degree assault, and resisting arrest. The trial court dismissed the terroristic threatening charge and the jury acquitted Claywell of assault. Claywell was convicted of resisting arrest, but he does not appeal that conviction.

parked. He stated that he purposely parked in the grass so that his vehicle would

not be in the way or struck overnight. He explained that he had expected that his

date would be there when he arrived, and when she was not, he began drinking his

first alcoholic drinks of the day. Claywell could not remember how long he sat in

his vehicle drinking, but he stated that it felt like a long time during which he drank

most of a half-pint of Jim Beam Whisky and opened a can of beer. Claywell

claimed he only put the key in the ignition so that he could roll the window down

to speak with the officer. Claywell asserted that he was angry when he was

arrested because he had done nothing wrong.

At the conclusion of his testimony, Claywell renewed his motion for a

directed verdict. The Circuit Court denied the motion. The jury then found

Claywell guilty of DUI and recommended that he serve two years of

imprisonment. The Circuit Court entered a conforming judgment on March 10,

2025, and this appeal timely followed.

**STANDARD OF REVIEW**

Our Supreme Court announced the rule for review of a directed

verdict as follows:

> On motion for directed verdict, the trial
> court must draw all fair and reasonable
> inferences from the evidence in favor of the
> Commonwealth. If the evidence is
> sufficient to induce a reasonable juror to
> believe beyond a reasonable doubt that the

-4-

> defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991) (citations omitted).

## ANALYSIS

A person is guilty of a DUI if he or she "operate[s] or [is] in physical control of a motor vehicle . . . [w]hile under the influence of alcohol[.]" Kentucky Revised Statutes (KRS) 189A.010(1)(b). The terms "operate" and "physical control" are not defined by statute, but in *Wells v. Commonwealth*, 709 S.W.2d 847 (Ky. App. 1986), this Court set out a non-exhaustive list of factors for courts to consider when determining if the elements are met. The *Wells* factors are: "(1) whether or not the person in the vehicle was asleep or awake; (2) whether or not the motor was running; (3) the location of the vehicle and all of the circumstances bearing on how the vehicle arrived at that location; and (4) the intent of the person behind the wheel." *Id*. at 849; *see also Commonwealth v. Woods*, 657 S.W.3d 902, 907 (Ky. 2022).

Kentucky courts have applied the factors in multiple cases. In *Wells*, the inebriated defendant was discovered in a hotel parking lot asleep behind the wheel of his vehicle. 709 S.W.2d at 848. On appeal from his DUI conviction, the Court held that there was insufficient evidence that the defendant had driven while intoxicated to the hotel, noting that the vehicle was appropriately parked in a designated space at the hotel. *Id.* at 850. Likewise, the Court held the Commonwealth had not shown that the defendant intended to operate the vehicle, even though the motor was running, because the transmission was in neutral with the emergency brake engaged and, most importantly, the defendant was asleep. *Id.*

In *Crosby*, an officer observed the inebriated defendant, Martin, texting and smoking while slumped behind the steering wheel of her idling vehicle, legally parked on the side of the road. *Commonwealth v. Crosby*, 518 S.W.3d 153, 154 (Ky. App. 2017). Martin claimed that she was attending a party and that she had gone to her vehicle to smoke, but she was arrested for DUI. *Id.* at 154-55. At a hearing to determine whether the arrest was supported by probable cause, Martin testified she had told the officer that she intended to return to the party and that she was staying there overnight, although the officer disputed this account. *Id.* at 155. The District Court concluded that Martin's DUI arrest was not supported by probable cause, finding there was no evidence from which the officer could determine that she had driven to the location while intoxicated or that she intended

to drive from the location, and suppressed any evidence seized after the arrest. *Id.* at 156. The Commonwealth sought review by filing a writ in the Circuit Court, which affirmed. *Id.*

On appeal, the *Crosby* Court focused its analysis on the third and fourth factors (noting that the first two clearly supported that Martin had control of the vehicle). *Id.* at 157. As to the third factor, the location of the car and how it arrived there, the Court acknowledged that, when there is no direct evidence, an irregularity in the location of the vehicle will typically support a finding that the defendant operated or controlled the vehicle while intoxicated. *Id.* The Court noted, however, that the obverse is also true, and thus when a vehicle is parked unobjectionably, as Martin's was, it is permissible to infer that the defendant surrendered their control prior to becoming intoxicated. *Id.* The Court reasoned that in such circumstances the fourth *Wells* factor, intention, becomes key. *Id.* at 158. The Court then concluded that the evidence supported the District Court's finding that Martin did not intend to drive and affirmed. *Id.* at 159.

In *Woods*, the inebriated defendant was found asleep and partially unclothed in the driver's seat of his vehicle that was double parked across two spaces in a Waffle House parking lot. 657 S.W.3d at 905. Woods admitted to drinking at least four drinks at two bars earlier in the evening and implied that he had driven to the Waffle House. *Id.* The District Court convicted Woods of DUI,

and the Circuit Court affirmed based on the circumstantial evidence surrounding Woods's arrival at the Waffle House. *Id.* This Court granted discretionary review and, citing *Crosby* and its emphasis on the intention factor, reversed the conviction. *Id.* at 905, 907-08.

The Kentucky Supreme Court reversed and reinstated Woods's conviction. *Id.* at 909. The Court distinguished *Crosby* by noting that Woods had admitted to drinking at a different location prior to the police discovering him outside an establishment that does not sell liquor and that his vehicle was parked irregularly. *Id.* at 908-09. Beyond these distinctions, the Court noted that Woods' vehicle arrived at the Waffle House somehow and it was virtually impossible that anyone other than Woods performed the maneuvers. *Id.* Based on this, the Court concluded that the third *Wells* factor, circumstances bearing on arrival, was more pertinent and that a rational trier of fact could have found Woods guilty of DUI beyond a reasonable doubt. *Id.*

On appeal, Claywell asserts that, applying the *Wells* factors as well as the principles announced in *Crosby* and *Woods* to the case at bar, it was clearly unreasonable for the jury to find him guilty of DUI. He argues that the fourth factor is conclusive and that the circumstantial evidence of the reason for his irregular parking, the fact that he did not drive after making his purchases, and his frustration when arrested, corroborates his version of events that he only drank

after he arrived at Junction Station and that he had no intention to drive again that evening. We disagree with Claywell.

The facts at issue are distinguishable from the cases on which Claywell has relied to argue the preeminence of the fourth intention factor. Unlike *Crosby*, where there was no evidence regarding the defendant's arrival other than that her vehicle was legally parked, here, there was proof of Claywell's intoxication and impairment minutes after he admittedly drove to Junction Station and parked his vehicle irregularly. Further, although Claywell did not admit to imbibing before he arrived at Junction Station, unlike the defendant in *Woods*, this fact alone is neither conclusive as to the third factor, circumstances of arrival, nor does it diminish the relevance of the factor itself.

As the Kentucky Supreme Court explained, because the *Wells* "factors are non-exhaustive, all other direct or circumstantial evidence remains available to prove a defendant's guilt[,]" and "the weight to be afforded any factor depends on the facts and circumstances of a given case." *Woods*, 657 S.W.3d at 907. Here, Claywell indisputably drove his vehicle to Junction Station and parked irregularly. True, the irregularity was not as marked as in other cases,[3] but it nevertheless

---

[3] As the *Wells* Court noted:

> For example, in *Jacobson v. State*, 551 P.2d 935 (Alaska, 1976), the defendant was intoxicated and was found asleep in his parked vehicle with the motor and heater running, but two wheels of the vehicle were situated on the highway and the other two were off

supports the reasonable inference that Claywell was under the influence, given that he exhibited additional signs of intoxication and impairment mere minutes later. Claywell's claim that his impairment resulted exclusively from the significant amount of whisky he allegedly imbibed after he parked is improbable, given the brief timeframe, and it is not supported by the officer's testimony that he did not observe a whisky bottle and that Claywell smelled strongly of hops, not whisky. Further, the inference that Claywell drove to Junction Station while impaired is not negated by the fact that he did not immediately drive away after making his purchase or his assertion that he had no intention of driving for the remainder of the evening. Given the totality of the evidence and the reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, we conclude it was not clearly unreasonable for the jury to find Claywell guilty of DUI.

## CONCLUSION

For the foregoing reasons, the judgment of the Clinton Circuit Court is AFFIRMED.

---

the pavement. In *State v. Lariviere*, 2 Conn. Cir. 221, 197 A.2d 529 (1963), the defendant's car was found in a parking lot with its engine running and was obstructing traffic. The vehicle was not in a parking slot and the defendant was asleep in the driver's seat.

709 S.W.2d at 849-50.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Emily Holt Rhorer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Ryan D. Mosley
Assistant Solicitor General
Frankfort, Kentucky